*Eastern Dist*
*January, 1832.*

M'DONOUGH
*vs.*
ZACHARIE.

---

## M'DONOUGH *vs.* ZACHARIE.

APPEAL FROM THE COURT OF THE FOURTH DISTRICT, THE JUDGE OF THE DISTRICT PRESIDING.

The third possessor may plead that the act of mortgage does not authorise the executory process.

The order for a writ of seizure and sale, is the judgment in the *via executiva*

If in the act of sale it is stipulated, that the vendor shall perform certain acts, and that on his failure, the vendee may withhold or suspend the payment of the price, no order of seizure can be obtained, until the stipulation be complied with.

A confession of judgment on a condition, has no effect until the condition be performed.

A third possessor may appeal from an order of seizure and sale, and is not driven to his remedy by injunction.

Proof of partial payments are no evidence that the vendor has performed all the acts he was bound to perform, before he could demand the price.

*Seghers,* for appellant.    *McCaleb,* for appellee.

**40**

The facts in this case are fully stated in the opinion of the court, delivered by *Porter, J.*

The petitioner on the 23d of January, 1818, sold to one John T. Pemberton, a plantation situated in the parish of Iberville, containing two thousand seven hundred and ninety-six arpents of land together with thirty slaves, for the sum of one hundred and twenty-five thousand dollars, twelve thousand dollars of which were paid in hand, and the balance of the price, viz: one hundred and thirteen thousand dollars, was covenanted to be paid in ten equal and annual instalments.

The deed evidencing this contract was passed before a notary public, and in it a clause was inserted, by which the property sold was declared to be specially mortgaged until final payment of the purchase money.

On the 27th day of March, 1821, Pemberton sold by public act the property he had purchased of the petitioner, together with twenty-four slaves more, which he had put on the plantation, to one Joseph Erwin. By this contract it was stipulated that Erwin should pay to the original vendor, McDonough, the balance due to him by Pemberton, under the same clauses, stipulations and agreements, contained in the act between the parties last mentioned, of date the 23d January, 1818.

The first of October, 1821, Erwin by authentic act sold to widow Zacharie, the same property, with the exception of one slave, which he had acquired of Pemberton. In the deed of sale it is stated, that the sum of seventy-nine thousand one hundred dollars, are yet due and owing to McDonough, the original vendor of Pemberton. This sum, the vendee Zacharie promised to pay, and McDonough appeared as a party to the act, and agreed, that she should be substituted in the place and stead of Erwin, for all that related to the seven instalments which remained due, and that Erwin was released from all responsibility he had incurred to McDonough, by the contract with Pemberton. This instrument also contains a clause, by which the land and the fifty-four slaves were to remain specially mortgaged and hypothecated to secure the payment of the money due to the petitioner.

Madame Zacharie died, and on the 14th of September, 1830, a sale of her property took place, by order of the Court of Probates, of the Parish of Iberville.    Among this property was the plantation in question, together with sixty-five slaves. The conditions of the sale were, twenty thousand dollars in cash,and the balance in six equal and annual instalments, with interest at six per cent., and with the express conditions, that the purchaser should fulfil and execute all and each of the stipulations and conditions contained in the three acts of sale already recited.    At this sale, Theodore Zacharie, became the purchaser, for the price of one hundred thousand dollars, on the terms and conditions announced by the judge of probates.

On the 30th June, 1831, the petitioner obtained from the judge of the fourth district an order, that the plantation and the fifty-four slaves, mentioned in the act between Erwin and Zacharie, be seized and sold to satisfy the sum of seventy-three thousand two hundred and thirty-two dollars and nine cents, which the petitioner swore, remained due and owing to him, on the sale originally made to Pemberton.

The petition on which this order was obtained, sets out at length the various acts and conveyances, already noticed. Pemberton is treated as the debtor, and it is averred that payment had been demanded of him, thirty days before the petition was presented.    Notice is also averred to have been given to the heirs of widow Zacharie, and especially to Theodore Zacharie, then in possession of the mortgaged property, ten days previous to the day on which the order was asked for, from the judge.

It is unnecessary to state any of the proceedings which followed the order, given by the judge, except that on the 17th of July, 1831, the third possessor, Theodore Zacharie, demanded an appeal from the order of seizure and sale. It was granted by the judge of the eighth district, on the condition of the appellant giving bond with security, in the sum of forty-thousand dollars.

A number of points were made, and very fully discussed on the argument.    The first and not the least important, is, whether an appeal lies to the Supreme Court, by the third

possessor in a case of this description. The petitioner insists the appellant has mistaken his remedy, and that if he were aggrieved, he should have applied for, and obtained an injunction from the court of the first instance.

The weight due to this objection, depends as well on the right of a third possessor to object to the proceedings against the principal debtor, as on the facts particular to this case, and we shall make them the subject of examination, before we go into the inquiry as to the right of appeal.

In the petition of appeal it is stated, that the appellant is in no way bound for the debt due to McDonough, but that he is possessor of the property ordered to be sold. The law permits the third possessor to oppose the sale, if the mortgage has not been registered, or if he has *any other plea.* Under this expression *other plea,* we are of opinion, the third possessor may show, the act of mortgage was not such as authorised the executory process, because it is only these instruments which import a confession of judgment, that can justify the creditor to seize by this summary proceeding, property which is in the hands of a third possessor. The law confers on a party so situated, the right of obtaining a release of the thing seized, by paying the debt. The proceedings therefore, should show the existence of a debt, and that it is payable.

*The third possessor may plead that the act of mortgage does not authorise the executory process.*

There is some danger of falling into error in these matters, from confounding the judgment rendered in the *via ordinaria* against the principal debtor, with that rendered in the *via executiva,* where the judge directs the mortgaged property to be sold. The right of the third possessor to oppose the former, is perhaps limited to nullities in the judgment, or to an obligation that it was obtained through fraud or collusion. But this judgment goes no further than to liquidate, and establish the debt, and since the late enactments in the Code of Practice, and in the amendments of our Civil Code, even this step is not necessary in many cases to enable the creditor to exercise the hypothecary action. In the latter the judicial power is not required to settle the amount due, nor to give to the instrument produced, the authority of a judgment confessed. The first is shown by the oath of the petitioner; the

EASTERN DIST.
January, 1832.

M'DONOUGH
vs.
ZACHARIE.

The order for
a writ of seizure
and sale is judg-
ment in the *via
executiva*.

second by the act of mortgage, and the order of the judge directing a writ of seizure and sale to issue, is the judgment in the *via executiva*. This subject was fully examined, in the case of *Dras* vs. *Tilghman*. The judgment directing property by a particular designation to be sold, which property is in the hands of a third possessor, immediately affects the interests of this possessor, and so the law considers it, for it requires notice to be given to him previous to the issuing of the execution. He has in all cases, therefore, an interest in seeing that judgment is properly rendered, in many instances the interest is as great as that of the principal debtor. In some it is greater, for if the latter should be insolvent, and the third possessor has purchased *bona fide*, he is alone interested in disputing the demand. It follows therefore, clearly, that as the proceedings materially affect him, and as the law has said, the property in his hands cannot be seized except on a judgment legally rendered in the *via executiva*, that it is open to him to show in all cases, either, that no order of seizure has been given, or that the act alleged to import a confession of judgment by the debtor, did not authorise such an order. 12 *Martin*, 691.

Whether this case presents such a ground of defence, or whether, if it does, advantage can be taken of it by appeal, are the remaining questions to be examined. The first depends on the instrument on which the order of seizure and sale was rendered. It is by public act; it contains a mortgage, and the petitioner has sworn that a large portion of the debt this mortgage was given to secure, remains due and unpaid. In all these important and material requisites, it therefore, satisfies the law. But the appellant contends that by a clause in this act it is expressly covenanted on the part of the mortgagee, that certain things shall be done by him before the money can be demanded of the mortgagor. In support of this position he has called our attention to a clause of which the following is a translation. "By a certificate of the register, dated this day, there are several general and special mortgages recorded against the seller, which affect the property now sold. But the parties, after the examination

and reading of said certificate have signed it *ne varietur* with the said notary and witnesses, in order that it may remain annexed to the present act, and it is expressly agreed between them, that the seller is bound to disengage (*degager*) and free the property at present sold from all these mortgages, and to give proof of his having done so to the buyer, before the payment which the latter is to make on the price of the present sale, on the last of March in the year 1824, *on failure of which the said purchaser is well and duly authorised to suspend and refuse all the payments which he is bound to make on the price of the present sale, from the year* 1824, *inclusive.*"

*If in the act of sale it is stipulated that the vendor shall perform certain acts and that on his failure, the vendee may withold or suspend the payment of the price, no order of seizure can be obtained until the stipulation be complied with.*

From this stipulation it is seen, that the vendor could not demand any of the payments from the year 1824, inclusive, until he furnished satisfactory evidence of the mortgages which affected his property being discharged. He has not done so; and the inquiry is whether he could legally seize and sell property for the non-payment of a sum of money, which by the terms of the contract that created the debt, was not due and payable until this evidence was furnished.

The mere statement of the question suggests an answer in the negative. The act to be performed on the part of the obligee was precedent to the right of recovery. The condition was at once suspensive and protestative; suspensive, because the obligation did not take effect until the event happened; and protestative, because the execution of the agreement depended on an event in the power of one of the parties to the contract. *La. Code*, 2016, 2019.

The case, therefore, being one in which the judge should not have granted the order to sell the mortgaged property in the hands of a third possessor, without satisfactory evidence that the creditor had done these acts upon the performance of which he was alone entitled to ask for it, the next inquiry is, can this error be corrected by an appeal?

The petitioner insists it cannot, and relies on the 567*th article of the Code of Practice*, which declares, among other things, that the party against whom judgment has been rendered cannot appeal, if such judgment has been confessed by him.

This position cannot be considered in a point of view more favorable for the petitioner, than by supposing the case before the court to be one, where suit had been brought in the ordinary way, and to the petition filed, the defendant had appeared and confessed judgment. If in such case that confession was conditional, it would not authorise an absolute judgment, and if such judgment were rendered, the defendant might legally appeal from it. Because in the case put, the confession being made upon a condition to be performed by the plaintiff, until performance is shown, there is nothing for the court to act on. The case supposed in the law where the appeal is denied, does not exist. A confession on a condition, is the same as no confession, if the performance of that condition does not take place. The suspensive condition prevents the obligation from taking effect until the event happens; and so also it prevents the confession of judgment from taking effect, if the condition be not performed.

A confession of judgment on a condition has no effect until the condition be performed.

The case before the court is precisely that just supposed. The principal debtor might have appealed, and our law has provided that not only the parties to a cause in which judgment has been rendered against them may appeal, but so also may third parties when they allege they are aggrieved. The appellant, in this instance, has brought himself completely within the letter and spirit of this provision. *Code of Practice, No. 571.*

It is contended the appellant's remedy was by injunction. And in support of this position we have been referred to the Code of Practice, which treats of the hypothecary action, and the executory process. In neither of these titles in that work, nor in that part of the Louisiana Code which treats of the action of mortgage, do we perceive that the opposition of the third possessor is limited to this mode of relief. The language used is, that he may *oppose* the creditor's claim to sell the property. An expression so general leaves the party open to the use of all means by which an opposition can be brought before the court; and an appeal is one of them when a third person is aggrieved by a judgment.

A third possessor may appeal from an order of seizure and sale & is not driven to his remedy by injunction.

EASTERN DIST.
January, 1832.

It was further urged, that payments had been made since 1824, and that it must be presumed they were made upon evidence presented to the debtor of the mortgages being discharged.  The fact is too equivocal to authorise so strong a conclusion.  The debtor might well agree to pay part of his debt without exacting proof of the liens being raised, particularly when so large a portion remained due.  Nor do we think the circumstance of his failure to make the first payments regularly, deprived him of the benefit of the suspensive condition attached to all those which fell due subsequent to the year 1824.  The contract expresses no such penalty, and the law does not imply it.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled and reversed; that writ of seizure and sale be set aside, and that the appellee pay costs in both courts.  This decree, however, being made without prejudice to the right of the petitioner to pursue the recovery of the debt set out in the petition according to law.