(111 So. 271)

No. 25918.

DALGARN v. NEW ORLEANS LAND CO. et al.

(Jan. 3, 1927.)

*(Syllabus by Editorial Staff.)*

1. **Contracts** ⬦350(2)—**Evidence held to show that clause requiring removal of tree roots to certain depth was in copy of specifications on which bid was based and accidentally omitted from contract.**

In action for work done under contract to clear land, evidence *held* to show that clause requiring removal of tree roots 18 inches below level of land was in copy of specifications on which bid was made and accidentally omitted in copying them into contract.

2. **Contracts** ⬦164—**Clause in specifications on which bid was based held part of contract from which accidentally omitted.**

Clause, accidentally omitted from contract to clear land, requiring removal of tree roots 18 inches below level of land, should be treated as part of contract, where contained in copy of specifications on which bid was based.

3. **Contracts** ⬦170(1)—**Land company held estopped to change practical construction of contract as requiring removal of stumps 18 inches below ground about each, not below average level of land.**

Land company, receiving and making payments on estimates of work done by clearing contractor from its representative, who knew to what depth stumps were being removed, without protest for several months, *held* estopped from changing its particular construction of contract as requiring removal of stumps 18 inches below ground where each was rooted, instead of below average level of land.

4. **Contracts** ⬦317—**Contractor, refusing to perform accidentally omitted requirement of contract, could not recover for work done thereunder or loss of profits by refusal to permit completion of work.**

Contractor, refusing to comply with accidentally omitted provision of contract for removal of tree roots 18 inches below land level, broke contract, and could not recover for work done thereunder or loss of profits caused by refusal to permit him to complete work.

5. **Contracts** ⬦278(1)—**Plaintiff should show his performance of or willingness to perform contract, without disclosing his breach thereof, if suing for defendant's breach.**

One suing on contract should show performance thereof by him, and, when suing for damages by breach thereof, should show his willingness to perform, and record should not disclose breach on his part.

6. **Contracts** ⬦346(12)—**One suing on contract cannot recover on quantum meruit.**

One who sues on a contract cannot recover on a quantum meruit.

7. **Work and labor** ⬦28(4)—**Plaintiff could not recover on quantum meruit without showing value of services.**

Contractor, suing for work done under contract to clear land and for loss of profits caused by defendant's refusal to permit him to complete work, could not recover on a quantum meruit, in absence of showing of value of his services.

St. Paul, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Columbus Reid, Judge.

Action by L. M. Dalgarn against the New Orleans Land Company and another. Judgment for plaintiff, and the named defendant appeals. Judgment annulled and set aside, and plaintiff's demand rejected and disallowed without prejudice.

See, also, 161 La. 653, 109 So. 345.

Charles Louque, W. O. Hart, and Lemle, Moreno & Lemle, all of New Orleans, for appellant.

John C. Hollingsworth and Hubert M. Ansley, both of New Orleans, for appellee.

OVERTON, J. This is a suit to recover judgment for a balance of $10,090.75, with legal interest on various installments thereof from the maturity of each installment until payment is made. Of the foregoing sum $8,064 is alleged to be due for work done under a contract, and the balance, amounting to $2,026.75, for profits, which plaintiff alleges he was prevented from earning by reason of a breach of the contract by the New Orleans Land Company, one of the defendants herein, occasioned by said company's refusal to permit him to complete the work undertaken.

The contract was one entered into between the New Orleans Land Company and plaintiff. The West End Country Club was made a defendant in the suit on the theory that it was the principal contractor, but was eliminated as a party thereto, before judgment, in the trial court. The suit, as it now stands, is therefore against the New Orleans Land Company alone. The defense is that plaintiff breached the contract by failing and refusing to comply with its terms.

The suit grows out of an effort on the part of the New Orleans Land Company to make suitable for a golf course a tract of land, consisting of 100 acres, which it had agreed to sell to the West End Country Club after having first placed it in condition for the purpose stated.

The third article of the contract by which the New Orleans Land Company agreed to sell the land to the West End Country Club relates to the obligation it assumed to clear and level the property and to place it in the condition desired by the club. The article, in part, reads as follows:

"Third: The party of the first part (the New Orleans Land Company) hereby agrees and binds itself to clear said site (including the entire area dedicated for canal purposes, if the sewerage and water board permits, the whole not to exceed one hundred acres) of all underbrush, growth, and roots, and to remove same from the property sold; to remove from said site and area all trees, except such as party of the second part (the West End Country Club) may determine to leave upon the property and may designate for that purpose, said designation to be made within thirty (30) days from date of deed of sale; to cut all stumps not less than eighteen (18") inches below ground level, and to remove all roots not less than eighteen (18") inches below ground level; and to remove all débris from the land sold.

"Party of the first part further agrees and binds itself to fill all holes with good dirt filling, and to clear, grade, level, and harrow said ground.

"It is further understood that, when all of said work has been done, party of the first part shall furnish and plant the said ground with Bermuda grass and that said grass tufts or seeds shall be planted at not over eighteen (18") inch centers."

Plaintiff secured indirectly from the New Orleans Land Company a memorandum of what was to be done and made a bid to do the work for $385 an acre. The company's secretary, after receiving the bid, notified plaintiff that he wished to see him. When plaintiff reached the company's office, its secretary told him that his bid was too high, handed him a package of papers, and told him substantially that they would inform him what was to be done. Plaintiff then requested permission to take the papers home with him, but the secretary declined to grant the request, and advised plaintiff that he would have a copy of the specifications made for him, and asked him to call for it the next day. The secretary, in the meantime, had his stenographer typewrite the specifications, instructing her to make two copies thereof. When plaintiff returned the next day, the secretary gave him the carbon copy of the specifications that he had had his stenographer make.

On June 11, 1919, plaintiff delivered in person to the New Orleans Land Company the following bid, attaching to it the copy of the specifications given him, to wit:

"I submit the following proposition for clearing the 100 acres of land for the West End Golf Club (meaning the West End Country Club) between the New Basin Canal and the Seventeenth Street Canal, as shown on map outlining same, survey made by S. A. Calongne, C. E.

"I will furnish all labor and materials to do all the work on same as outlined in article 3 of your agreement with the Country Club, as per copy attached, for the sum of $335 per acre, payments made monthly, on approximate estimates on a 90 per cent. basis of estimate.

"I will give bond for 50 per cent. of the amount of the contract for faithful performance of the contract.

"Said work to be completed nine months from the date of signing the contract.

"The 10 per cent. retained from payments on monthly estimates to be paid upon completion of job."

The copy of the specifications delivered to plaintiff did not contain (apparently, purposely so) the clause, relating to the planting of grass, contained in the agreement, entered into between the New Orleans Land Company and the West End Country Club, and quoted above. When plaintiff delivered his bid with the specifications attached, his attention was called to the fact that the New Orleans Land Company was also under obligations to plant the land with Bermuda grass, after it had been harrowed and leveled, and with his consent the grass clause was added, and also one to the effect that all work must be done to the satisfaction of the West End Country Club. When these additions were made to the specifications, plaintiff signed the latter for the purpose of showing his approval of the clauses that were added, and, as thus amended, his bid was accepted by the New Orleans Land Company.

Plaintiff and the New Orleans Land Company concluded to have their agreement evidenced by a notarial act, and on June 20, 1919, an act, which purports to embody it, was executed by them before a notary public. The wording of the act, relating to the work to be done, is identical with article third of the agreement between the New Orleans Land Company and the West End Country Club, quoted in part, supra, save that the clause reading, "And to remove all roots not less than eighteen (18") inches below ground level," is omitted, and the words, "All work to be done to the satisfaction of the West End Country Club's representative," which, with plaintiff's approval, were, in substance, inserted in the specifications when he submitted his bid, are found added to the paragraph setting forth the provision relating to the planting of grass. It may be here said, by way of explanation, that one of the contentions of the New Orleans Land Company is that the clause relative to the removal of roots 18 inches below ground level was accidentally omitted by the notary in copying the specifications into the notarial contract, and that the clause should be treated as part of that contract.

The ground to be cleared and leveled was once swampy. It had upon it many old cypress stumps and knees and a few trees and some underbrush. The ground was level, save that around each stump or tree, or most of them, there was a slight elevation.

Two or three days after the contract was signed plaintiff began the work of removing the stumps and cypress knees from the land, and of clearing and preparing it in other respects. John Wirth was employed by the New Orleans Land Company to inspect from time to time the work that was being done and to make estimates thereof preparatory to the making of payments to plaintiff. Plaintiff, in removing the stumps, removed them to a depth of 18 inches below the surface of the ground where each stump was without reference to the average level of the land. In removing them he cut and removed the roots for a distance of about two feet from the stumps, and also removed outcropping roots, but as long as he was permitted to work on the land removed no other roots than these. Wirth, in making his inspections, saw that plaintiff was removing the stumps to a depth of 18 inches below the surface of the ground where each stump was, without regard to the average elevation of the land. He and plaintiff went over the property in the early days of August, September, October, and November, 1919, and made estimates of the work done during each preceding month. Wirth approved these estimates, and the New Orleans Land Company made payments on them.

Early in November, about the time that the estimate for the month of October was presented, a question arose as to whether plaintiff was complying with the terms of his contract by removing the stumps to the required depth. The West End Country Club entered a complaint to the effect that he was not, and that his failure in that respect would ren-

der the land unsuitable for a golf course. As to whether plaintiff was complying with the contract in that respect depends upon the interpretation to be given to the words "ground level" in the clause in the contract requiring that all stumps be removed to a depth of 18 inches below such level. Plaintiff contends that he was complying with the contract by removing them 18 inches below the surface of the ground where each stump was.' On the other hand, Theard, the civil engineer for the West End Country Club, took the position that plaintiff was not doing the work according to contract, at least in accordance with the contract between the club and the New Orleans Land Company, since the words "ground level" are understood usually by engineers to mean the general level of the ground as it may be established by taking elevations, or readings thereof, at various points on the land, equidistant, and striking an average, and that the level of the ground in question, and similar grounds in the rear of New Orleans, is fairly well fixed at the elevation of "mean Gulf level," which is approximately "21 Cairo datum."

Efforts were made to adjust in some way the differences that existed in the interpretation of the contract and the manner of executing it. Pending the efforts to adjust these differences, two or three comparatively small payments were made on the work, and plaintiff continued in his efforts to perform the contract in the same manner in which he had been doing. On December 16, 1919, he was formally put in default for his alleged failure and refusal to remove the stumps and roots to a depth of 18 inches below ground level, and on January 12, 1920, he was requested to leave the land.

[1, 2] During the foregoing discussions it developed that the clause relating to the removal of roots 18 inches below the level of the land was not contained in the contract passed before the notary. It is one of the contentions of the New Orleans Land Company, urged in its pleadings, and developed by the evidence, that this clause was accidentally omitted by the notary in copying the specifications into the contract, which was being passed before him, and should be treated as part of it, and it is plaintiff's contention that this clause was not in the specifications upon which he based his bid, and hence that it was not accidentally omitted from the contract.

We feel abundantly satisfied that the clause was in the copy of the specifications which plaintiff used in making his bid, and which he attached to it, and that, in fact, his bid was based, in part, upon the service to be rendered by the removal of the roots 18 inches below the level of the land. The clause was in the contract between the New Orleans Land Company and the West End Country Club, and it would be unreasonable to conclude that the former in contracting with plaintiff would intentionally omit that clause, and at the same time contract with him to level the land and to pay him for that work, when, if it did, it would have to partly destroy the leveling done by digging down into the ground, which was once well wooded, to remove the roots, and then relevel it before it could demand of the club to accept the property. Nor do we think that the clause was omitted by the stenographer in copying the specifications from the contract with the Country Club. Only two copies of them were made, the original and one carbon copy, and they were copied only once. The part which the stenographer was directed to copy was marked off for her, and she testifies that after her work was done it was checked with the contract with the club from which the copies were made, and found to be correct. Besides, when plaintiff delivered his bid to the New Orleans Land Company, the carbon copy of the specifications, which had been delivered to him, was attached to it, and, when plaintiff consented to the insertion of the grass

clause in the specifications, the last page of the copy annexed to his bid was detached by the secretary of the company, to the end that the stenographer could typewrite the grass clause on that page. When she had done so, as we have seen, plaintiff signed the specifications to show his approval of the addition of that clause. The copy of the specifications, signed by him, with the grass clause added, contains the clause, relative to the removal of roots, omitted from the notarial contract. That the copy is the same, unchanged in any respect, is shown by the evidence of the company's secretary and also by that of its stenographer. Our conclusion is that the clause was in the copy of the specifications upon which plaintiff based his bid, and was accidentally omitted by the notary in copying the specifications into the contract. Our conclusion is also that the clause, having been accidentally omitted from the contract, and having formed a part of the specifications upon which plaintiff bid, should be treated as a part of the contract.

[3] The New Orleans Land Company urges that plaintiff's demand should be rejected, because he failed and refused to comply with the provision of the contract relating to the removal of stumps 18 inches below "ground level" as that clause is interpreted by the engineer for the West End Country Club, which it deems the proper interpretation; and, treating the clause relative to the removal of roots as a part of the contract, which we have held it should be considered to be, also urges that plaintiff's demand should be rejected, because he refused to comply with that clause.

With reference to what may be termed the first defense, stated above, we may say that we do not find it necessary to define the expression "ground level" as used in the contract. Plaintiff had been removing stumps for some time, when the difference between the parties arose as to the proper construction to be placed upon that term. He construed it, in executing the contract, to mean 18 inches below the ground where each stump was rooted, and not 18 inches below what may be termed the average level of the land. Wirth, the representative of the New Orleans Land Company, saw the holes caused by the removal of the stumps, knew to what depth the stumps were being removed, and delivered the estimates of the work done to plaintiff to be delivered to the New Orleans Land Company to serve as a basis for the making of payments to him. The company, without any protest on its part, until some time in November, if not later, as to the depth to which the stumps were being removed, received the estimates, and made payments thereon, at least, up to the estimate for November. It therefore may be said that both parties to the contract, for several months, construed the contract alike, as appears from their conduct. While it is true that the contract contains a provision that all work must be done to the satisfaction of the West End Country Club's representative, still the club was not a party to the contract, caused no representative to inspect the work, and for several months after the work had begun plaintiff was led to believe by the conduct of the New Orleans Land Company that the stumps were being removed satisfactorily. In these circumstances it would be unjust to hold that it was the duty of plaintiff to go over his work and remove the stumps to a greater depth. In our opinion the New Orleans Land Company is precluded from changing the construction, which by its conduct it placed upon its contract, and is estopped from now urging the changed construction as a defense.

[4] A different situation, however, is presented as to the removal of the roots. The New Orleans Land Company had acquiesced by its conduct in the interpretation placed by plaintiff on the clause in the contract, relative to the removal of stumps. The only roots, however, which plaintiff had removed, were those he had to remove in detaching or cutting the stump from the land, and such as

were protruding above the surface. He had not reached that point in the performance of his contract where he might be reasonably expected to remove all roots to the required depth. He, however, refused to recognize the root clause as a part of the contract, and therefore to remove the roots below the surface of the land at all, even to the same depth at which he removed the stumps. It was important that the roots beneath the surface of the land be removed to the proper depth, for the reason that the land was spongy, and, like similar lands in the rear of New Orleans, was expected to sink a number of inches, when properly drained and prepared for use, which would have the effect of causing roots, originally beneath the soil, to protrude. The New Orleans Land Company could not be expected, to permit plaintiff to finish the contract in the face of his positive refusal to comply with the root clause. To have done so would have placed the company in the position of having to go over the work after the land had been leveled, and remove the roots, thereby destroying the grading in part, and forcing it to relevel the property, to say nothing of having to pay plaintiff a sum which included the removal of the roots to a depth of 18 inches. Therefore plaintiff breached a part of the contract himself.

[5] One who sues upon a contract should show performance of the contract on his part, and, when one sues for damages resulting from an alleged breach of a contract, he should show that he was willing to perform, and the record should not disclose on his part a breach of the contract. M'Donough v. Zacharie, 3 La. 313; Moss v. Howard, Prestons & Barrett, 23 La. Ann. 465; 13 C. J. p. 726, § 849.

[6, 7] Since this suit is one based on a contract for work done under it and for the loss of profits for an alleged breach of the contract, there can be no recovery herein, for the record discloses a breach on plaintiff's part. One who sues on a contract cannot recover on a quantum meruit. Even if we should be justified in permitting one who sues on a contract to recover on a quantum meruit, still the record in this instance does not disclose what the value of plaintiff's services were. It may be said that, after plaintiff left the property, the New Orleans Land Company completed the work at a very heavy expense.

For the reasons assigned, the verdict of the jury and the judgment of court based thereon are annulled and set aside, and plaintiff's demand is now rejected and disallowed, reserving to him such rights as he may have to sue on a quantum meruit, plaintiff to pay the costs of both courts.

ST. PAUL, J., dissents.