Jeanne Fosco, a Minor, by Her Mother and Next Friend, Rita Fosco, et al., Plaintiffs, v. Anthony R. Delisi, General Contractor, Inc., a Corporation, Midwestern Caisson Corporation, a Corporation, and Catholic Bishop of Chicago, a Corporation, et al., Defendants.

Anthony R. Delisi, General Contractor, Inc., a Corporation, Counterplaintiff-Appellant, v. Midwestern Caisson Corporation, a Corporation, Counterdefendant-Appellee.

Gen. No. 51,873.

First District.

December 19, 1968.

Tom L. Yates, of Chicago (Carl E. Abrahamson and L. J. Locke, of counsel), for appellant.

Leo J. Doyle, Jr., Richard L. Berdelle, Leo M. Tarpey, Jr., and Jerome H. Torshen, of Chicago (Jerome H. Torshen, of counsel), for appellee.

TRAPP, J.

Counterplaintiff, Anthony R. Delisi (herein designated plaintiff) appeals from a judgment for counterdefendant, Midwestern Caisson Corporation (herein called defendant) in a suit upon an indemnity agreement.

Plaintiff, Delisi, had a general contract with the Catholic Bishop of Chicago for construction of a school in a residential neighborhood and this contract contained an indemnity agreement against claims for injuries. Delisi entered a subcontract with defendant, to perform a specified part of the work which consisted of excavating for and placing 80 caissons. Such were constructed by drilling holes of varying diameter about 50 feet deep, and filling them with concrete and steel reinforcing rods.

While there were many contractors for the job, the caisson work was to be performed first. At the time of the injury which is the basis of the indemnity suit, all workmen on the job were employees of defendant, except one Geoppo, a superintendent of the general contractor whose job it was to visit the site and inspect the work.

In the digging process, large mounds or hills of clay were produced upon the site, and school children came to play there frequently after school. In each hole the cement was brought to within 30 inches of the surface of the ground and several steel reinforcing rods projected about 30 inches above the concrete. On July 18, 1960, Jeanne Fosco, a twelve-year-old girl, who had been playing on a clay hill, slipped into one of the holes and onto a rod and was injured. She recovered a judgment for $7,500 against both Delisi and Midwestern Caisson. They each paid half of the judgment. Plaintiff had tendered the defense to defendant, which was refused. Plaintiff expended $2,500 in attorneys' fees and costs.

The contract between plaintiff and defendant provided that defendant would furnish all labor, materials, services and equipment and do all things necessary to perform the part of the contract, including applicable con-

458

tract conditions regarding caissons, including drilling, furnishing and placing concrete, placing reinforcing dowels, caisson caps, concrete and soil tests, probing, engineering and layout, and placing anchor bolts. The contract included the following indemnity provision which is said to be substantially identical with the indemnity which the general contractor furnished the owner:

"8. The subcontractor must keep and save the contractor harmless from *any and all claims*, demands, suits which may be brought against the contractor by the subcontractor or subcontractors' employees, or by the public in connection with or on account of any claim made by the public or employees, or any terms or provisions of any compensation act or any common law. . . ." (Emphasis supplied.)

The agreement required certificates of insurance to cover workmen's compensation, public liability for bodily injury and property damage, coverage of the indemnity agreement and automobile and truck insurance.

If the area had been fenced it would have been the general contractor's duty to do it. The general contractor testified that he felt a moral obligation to fence and ultimately did so. In the original action, one of the allegations of negligence was failure to fence. There was testimony that the general contractor's superintendent requested the subcontractor's foreman to cover the holes with boards, and that the foreman would say: "Okay." The holes were ultimately covered with boards. The subcontractor's workmen knew children played on the site and sometimes chased them away.

Plaintiff contends, first, that the indemnity agreement required defendant to indemnify him and second, that, even in the absence of an indemnity agreement, defendant being guilty of "active negligence," and plaintiff being guilty at most of "passive negligence," an indemnity ob-

459

ligation would arise as a matter of law. Defendant contends that in the absence of unequivocal language covering liability in such cases, indemnity agreements are construed not to cover those situations where the indemnitee is guilty of negligence, and further, that the negligence of both contractor and subcontractor are of like kind and are not distinguishable as "active" and "passive."

Defendant's contention appears to go even farther than the position stated. There is no doubt whatever that defendant was negligent in leaving the holes, which contained upright metal rods exposed, at a time when defendant had full knowledge that children played upon the construction site, and that there were hills of clay from which a person could slip into the holes and fall upon the rods. It appears that defendant is seeking a construction of the agreement that he is liable to indemnify only in those cases where the general contractor's negligence in no way contributes or participates.

While it is true that there are some authorities which hold that an indemnity is not to be construed to cover cases of indemnitees' own negligence in the absence of unequivocal language so indicating, the cases cited to us are cases in which the indemnitee's negligence is the *sole cause* of the injury. No authorities cited in support of this rule exempt the indemnitor where his negligence is a proximate cause of the injury. So, in Westinghouse Co. v. Building Corp., 395 Ill 429, 433, 70 NE2d 604 (1947), a subcontractor's employee was injured by the negligent operation of an elevator car by an employee of the general contractor, the sole engineer on duty. He had complete control of the machinery which operated the elevators. Neither any negligence, nor any proximate connection with any act or omission of the subcontractor or his employees, was established or attempted to be established. The indemnity in that case referred to claims by persons "arising out of any acts or omissions by the

Contractor." In Thompson-Starrett Co. v. Otis Elevator Co., 271 NY 36, 2 NE2d 35 (1936), the court found the general contractor guilty of "active negligence." No negligence or causal connection was attributed to the subcontractor or his employees. In Southern Pac. Co. v. Layman, 173 Ore 275, 145 P2d 295 (1944), one who had constructed a private crossing of a railroad, indemnifying the railroad against liability from any cause resulting directly, or indirectly, from the maintenance, presence or use of the crossing, was liable where a truck was damaged solely by the negligence of the railroad in operation of the train. In George Sollitt Const. Co. v. Gateway Erectors, Inc., 260 F2d 165 (7th Cir 1958), a subcontractor's employee was injured by a hoist furnished by the general contractor when the hoist fell due to a defective "dog" which served to engage a gear on the hoist "or some other negligence or breach of duty by plaintiff or its employees." No negligence or causal connection of any act or omission of the subcontractor or his employees was shown. In Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 195 F2d 467 (7th Cir 1952), a trucker was using a coal hopper which defendant had been licensed by the railroad to construct. A railroad engine pushed the truck against the trucker and injured him. The court found that there was no question but that the injury was due to the negligence of the railroad. No attempt was made to connect any negligence or any act or omission of the licensee with the injury. In Halperin v. Darling & Co., 80 Ill App2d 353, 225 NE2d 92 (1967), where the lessor retained full responsibility for the active maintenance of a truck and lessee agreed to save lessor harmless from injury resulting from "operation" of the truck, the court held that brake failure due to negligent maintenance did not arise out of "operation" of the truck.

On the other hand, there are numerous authorities, and particularly Illinois authorities, which hold the indem-

461

nitor liable without proof of negligence on the part of the indemnitor, or where the negligence was that of the indemnitee, when the indemnity provision is general and does not specifically refer to the matter of the indemnitees' negligence. In Gay v. S. N. Nielsen Co., 18 Ill App2d 368, 152 NE2d 468 (1958), the subcontractor was held on an indemnity in a contract which called for blasting and property damage resulted from the blasting. The court rejected the subcontractor's contention that he could be held liable only upon proof of negligence. In Haynes v. Montgomery Ward & Co., 47 Ill App2d 340, 198 NE2d 548 (1964), a janitorial service company agreed to hold the building owner " 'harmless for any and all injuries or accident sustained by the Vendor's employees while on the premises of the Fair Store Company or while en route to perform any services for the Vendee.' " The janitorial service company was given use of the elevators. The floor indicator on the elevator had been stuck for a long time before the accident, and a service company employee, being misled, stepped into the elevator shaft and fell to the bottom. The court held the subcontractor on the indemnity, and said that it is not necessary to make specific reference to indemnitees' negligence to include such cases in the indemnity. It cited in support, Russell v. Shell Oil Co., 339 Ill App 168, 89 NE2d 415; Northern States Co. v. A. Finkl & Sons Co., 8 Ill App2d 419, 132 NE2d 59; United States Steel Corp. v. Emmerson-Comstock Co., 141 F Supp 143 (ND Ill 1956). The court said:

> "The words 'any and all' are all inclusive; their conciseness does not limit their scope; . . . ."

See also Shell Oil Co. v. Hercules Const. Co., 74 Ill App2d 166, 219 NE2d 392, and 55 Ill Bar J 206. In Newberg Const. Co. v. Fischbach, 46 Ill App2d 238, 196 NE2d 513, an employee of the subcontractor sued the general contractor for negligence in reference to injury upon a scaffold. The subcontractor had assumed "entire responsibili-

ty and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Contractor or otherwise and to all property, caused by, resulting from, arising out of, or occurring in connection with the execution of the Work . . . ." The court held the indemnity was sufficiently broad to cover injury to the subcontractor's employee caused by the negligence of the contractor. In Patent Scaffolding Co. v. Standard Oil Co., 68 Ill App2d 29, 215 NE2d 1 (1966), McKee and Company obtained a hold harmless agreement from Johns-Manville Company, which included responsibility for damage to equipment used by Johns-Manville, its employees and subcontractors. A scaffold was damaged when certain tanks were being tested by McKee and Company at a time when four employees of Johns-Manville's subcontractor were using the scaffold. The court held the indemnity was broad enough to protect McKee and Company against its own negligence. In Spurr v. Acme Steel Co., 238 F Supp 606 (1964), a pipe fitter, an employee of a subcontractor fell into a pit wherein the negligence of the general contractor was involved. The subcontractor had agreed to "indemnify and save harmless the Owner [Acme], the Engineer, the Contractor [LaSalle] and their respective agents from any and all liability, payments and expenses of any nature for injury or death to any person . . . caused or alleged to have been caused by the Sub-Contractor, . . . ." The court distinguished numerous cases including Westinghouse Co. v. Building Corp., 395 Ill 429, 70 NE2d 604, the latter upon the ground that there the indemnity was confined to "acts or omissions of the indemnitor." The court noted a change in the trend of the Illinois decisions with a tendency to construe these agreements as normal apportionments of risk among various contractors. In De Tienne v. S. N. Nielsen Co., 45 Ill App2d 231, 195 NE2d 240 (1963), the agreement provided:

"The Subcontractor shall indemnify and save the Owner, Architect and General Contractor harmless against any and all claims for damages to persons, caused directly or indirectly or occasioned by the execution of the work included in this order."

Employees of Nielsen, the general contractor, negligently caused injury to employees of the subcontractor. Nielsen settled with the employees and sued the subcontractor, and was allowed reimbursement despite Nielsen's negligence.

In our opinion, the present indemnity covers all claims made by anyone based upon compensation statutes or common-law liability. We are not here confronted by the situation where the subcontractor had no control over the operation which was the basis for the conservative approach in all of the cases cited by defendant, which we have heretofore reviewed. Here the defendant could have covered the holes and prevented the particular incident that occurred. The defendant's work was a proximate cause of the injury.

We are not authorized to read into the indemnity an exception in the case in which the indemnitee's failure to act also created a situation which made the incidence of the situation more probable. The indemnity was sufficiently broad to cover the injury.

The judgment is reversed and the cause is remanded, with directions to enter judgment in favor of the counterplaintiff and appellant in the sum of Three Thousand Seven Hundred Fifty ($3,750) Dollars, plus the stipulated attorneys' fees in the amount of Two Thousand Five Hundred ($2,500) Dollars, and costs of suit.

Reversed and remanded, with directions.

SMITH, P. J. and CRAVEN, J., concur.