GERALDINE BURNS, Admrx. of the Estate of Robert C. Burns, Deceased, *et al.*, Plaintiffs, *v.* FORD MOTOR COMPANY, Defendant.

FORD MOTOR COMPANY, Third-Party Plaintiff-Appellee, *v.* PIPING SYSTEMS, INC., Third-Party Defendant-Appellant.

PIPING SYSTEMS, INC., Third-Party Plaintiff-Appellee, *v.* ARMSTRONG CONTRACTING AND SUPPLY CORP., Third-Party Defendant-Appellant.

(No. 56354;

First District (3rd Division)—October 3, 1974.

*Supplemental opinion upon rehearing filed June 5, 1975.*

A. G. Hubbard, Sam L. Miller, and Frederick W. Temple, all of Hubbard, Hubbard, O'Brien & Hall, of Chicago, for Piping Systems, Inc.

Gary M. Elden, William H. Symmes and John M. O'Connor, Jr., all of Kirkland & Ellis, of Chicago, for Armstrong Contracting and Supply Corp.

Francis D. Morrissey, Thomas F. Bridgman, and J. Patrick Herald, all of Baker & McKenzie, of Chicago, for Ford Motor Co.

Mr. JUSTICE McGLOON delivered the opinion of the court:

In this case, we are asked to determine the validity of two indemnification clauses. The original action was brought by the plaintiff against the defendant Ford Motor Company pursuant to the Structural Work Act (Ill. Rev. Stat. 1965, ch. 48, pars. 60—69), to recover damages arising from her husband's fatal fall from a scaffold. Ford, the owner of the premises where the fall occurred, was found by the jury to be liable under the Act, and judgment was entered against Ford for $180,000. Ford proceeded against its general contractor, Piping Systems, Inc., in an action for indemnification based upon the contract between Ford and Piping. The trial court directed a verdict in favor of Ford and against Piping for $180,000. Piping, in turn, sued the subcontractor, Armstrong Contracting and Supply Corporation, for indemnification under the provisions of the Piping-Armstrong contract. The verdict was di-

rected against Armstrong for $180,000. Judgments were entered upon the directed verdicts. At the time of the fall, the decedent was employed by the subcontractor, Armstrong.

Defendant Piping Systems, Inc. appeals from the judgment entered against it on the grounds that its liability was based upon an indemnification clause that was not a part of its contract with the Ford Motor Company. Defendant Armstrong Contracting and Supply Corporation appeals from the judgment entered against it on the grounds that the indemnification clause in its contract with Piping does not apply to indemnify Piping for Piping's contractual obligation to indemnify Ford.

We affirm.

The record reveals the following facts. On November 22, 1965, two employees of the subcontractor, Armstrong Contracting and Supply Corporation, were engaged in insulating pipes in the Ford Motor Company's Chicago Assembly Plant pursuant to Armstrong's contract with Ford's general contractor, Piping Systems, Inc. Since the pipes ran close to the ceiling, the men used a scaffold in their work; one man remained on the ground and handed the insulation materials to the decedent, Robert Burns, who was atop the scaffold. During the course of the work, Mr. Burns fell face down to the floor, sustaining injuries which resulted in his death. Evidence was presented to show that one of Ford's fork lift truck drivers drove his vehicle by the scaffold at the time the decedent fell, but the driver testified that his vehicle never touched the scaffold and his truck was stopped in front of the scaffold at the moment the decedent fell. Ford's safety engineer investigated the matter shortly after the fall, and the engineer testified at trial that the information contained in his accident report was the substance of his conversation with the fork lift truck driver. The report said that "* * * as the driver approached the scaffold, he slowed down and checked the clearance between the load and the edge of the scaffold. Seeing it was okay he proceeded. The next thing the driver knew was that one leg of the scaffold was hanging in the track way and the man was lying on the floor next to him." Other evidence was introduced to show that the scaffold was not being used properly because the safety guardrail was not attached and only one of the scaffold's four wheels was locked in place. Customarily, all four wheels are locked so the scaffold will not move about, but in this case only one of the wheels was locked and the evidence tended to show that the scaffold pivoted about on the one locked wheel.

Pursuant to the Structural Work Act (Ill. Rev. Stat. 1965, ch. 48, pars. 60—69), Burns' widow brought this action against Ford Motor Company. The plaintiff's complaint alleged that the scaffold was placed too

close to the fork lift truck paths, was used without a guardrail, and was not constructed and operated in a safe, suitable manner.

Ford filed a third-party complaint against Piping Systems, Inc., its general contractor on the job, for indemnity based upon the indemnification clause in its contract with Piping. Similarly, Piping filed a third-party complaint against Armstrong Contracting and Supply Corporation, the subcontractor, for indemnification based upon its contract with Armstrong.

After hearing the evidence, the jury returned a verdict of $180,000 for the plaintiff against Ford, having found that Ford had charge of the work within the context of the Act. Judgment was entered upon the verdict. Based upon the contractual indemnification clauses, the trial court directed verdicts and entered judgments for Ford against Piping, and for Piping against Armstrong. Piping and Armstrong appeal from these judgments. Ford has already paid the plaintiff, so that she is not a party in these appeals.

We first consider the appeal of Piping Systems, Inc., against Ford Motor Company. Piping contends that its contract with Ford did not include the indemnification clause its liability was based upon, and therefore the trial court erred as a matter of law in directing a verdict against Piping based upon the indemnification clause in question.

The contract between Ford and Piping was entered into on March 3, 1965, the date of Ford's purchase order. Ford's purchase order incorporated by reference a certain Attachment 4770-B (par. J), which reads as follows:

> "Buyer's [Ford's] General Conditions for Lump Sum Construction Contracts dated 1/57, *attached hereto* are made a part of the terms and conditions of this purchase order. In those cases where this *attachment* may be in conflict with the terms and conditions appearing on the reverse side of this order, the General Conditions shall prevail." (Emphasis provided.)

The General Conditions supplement contains the indemnification clause Ford relied upon in its action against Piping. The complication arises, however, due to the undisputed and admitted fact that the General Conditions supplement referred to in Attachment 4770-B (par. J) *was not attached* to the purchase order. Piping's position is that the indemnification clause indemnifies Ford from the effects of its own negligence, that Ford was negligent with regard to the operation of fork lift trucks in the vicinity of the scaffold, and that the Illinois Supreme Court's rule in *Tatar v. Maxon Construction Co.* (1973), 54 Ill.2d 64, 294 N.E.2d 272, and *Westinghouse Electric Elevator Co. v. LaSalle Monroe `Building Corp.* (1947), 395 Ill. 429, 70 N.E.2d 604, should apply to these facts.

The rule is that " '* * * an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract [citations], or such intention is expressed in unequivocal terms.' " (54 Ill.2d at 67.) Applying the rule to these facts, Piping submits that Ford's failure to attach the General Conditions to either the purchase order or Attachment 4770-B creates an ambiguity, and the *Tatar* rule should operate so that Ford will not be indemnified against its own negligence.

Ford's position is that the General Conditions supplement was included in the Ford-Piping contract, and that this court must give effect to the intention of the parties as expressed in the documents that the General Conditions should be part of the contract. As proof of Piping's intentions, Ford calls our attention to Piping's proposal to Ford for the job, which stated that Piping "will furnish all labor, materials, supervision, equipment, and incidentals * * * in accordance with * * * General Conditions dated 11-1-56, revised January, 1957; as prepared by the Ford Motor Company * * *." Defendant appellant Piping's counsel admitted during oral arguments that Piping probably knew of the contents of the General Conditions supplement which contained the indemnification clause.

The issue for our consideration is whether an indemnitor with actual notice of an indemnification clause is liable under such an indemnification clause which is incorporated by reference into the contract between the indemnitor and the indemnitee as an attachment, but was not actually attached to the contract.

To understand the *Tatar* rule Piping relies upon, we must analyze the cases which preceded *Tatar*. The first case of note is *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp., supra.* In that case, a Westinghouse repairman was killed when one of the defendant building owner's employees negligently left an elevator unattended, and the elevator fell on the Westinghouse repairman. The contract between Westinghouse and the owner contained a clause whereby Westinghouse agreed to indemnify the owner from any lawsuits arising out of Westinghouse's work. The contract contained no language specifically providing that Westinghouse was to indemnify the owner against the negligence of the owner's employees, but the defendant building corporation contended that the clause was broad enough to include such coverage. The Illinois Supreme Court rejected the defendant's broad interpretation of the contract for the following reason:

"To adopt this construction of the contract would impose on the contractor the duty to indemnify against injuries entirely without his control, and such should not be adopted in the absence of clear

language in the contract including injuries arising from the negligence of appellant's own servants." 395 Ill. at 434-35.

In *Schek v. Chicago Transit Authority* (1969), 42 Ill.2d 362, 247 N.E. 2d 886, the Illinois Supreme Court considered the question of whether the appellate court was correct in strictly construing an indemnification clause. Reversing, the court stated the proper rule to be applied when construing an indemnification clause:

> "The primary object in construing a contract is to give effect to the intention of the parties involved. Their intent must be determined solely from the language used when no ambiguity in its terms exists, and a strict construction of that language which reaches a different result from that intended by the parties should not be adopted." (42 Ill.2d at 364.)

So stated, we feel the rule of strict construction became a rule of fair construction with the specific *Westinghouse* requirements.

In *Tatar v. Maxon, supra,* the court followed this rule writing that "[t]he only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all its language and provisions." (54 Ill.2d at 67.) In *Tatar,* the court reasonably interpreted an indemnification clause but concluded that the clause, "when measured against the standards set forth in *Westinghouse,*" did not provide indemnification against one's own negligence. 54 Ill.2d at 68.

The rule in *Tatar* dictates that the agreement in the instant case be given a fair and reasonable interpretation based upon a consideration of all its language and provisions. The problem, however, is that the text of the indemnification clause is not contested or claimed to be ambiguous; rather, the difficulty is that the General Conditions supplement was not attached to the contract. Piping claims that the failure to attach created an ambiguity to be resolved by this court. We do not agree with Piping's contention. The contract between Ford and Piping was not made ambiguous by the failure to attach because the contract is not reasonably amenable to other constructions, which is the crux of ambiguity. (17A C.J.S. *Contracts* § 294(2) (1963).) This court need only determine the effect, if any, of the failure to attach the General Conditions supplement, following the traditional, reasonable, and fair precepts of contract law.

■■ It is well settled that the primary object in construing a contract is to give effect to the intention of the parties involved. A contract must be read according to the intent of the parties, notwithstanding clerical omissions. (17A C.J.S. *Contracts* § 315 (1963).) Although the written contract is to be regarded as the only outward expression of the mean-

ing of the parties, previous negotiations and agreements may be considered for limited purposes. *Martindell v. Lake Shore National Bank* (1958), 15 Ill.2d 272, 283, 154 N.E.2d 683, 689.

In the instant case, both parties concur that the General Conditions supplement was not attached to the contract, but there is no indication in the record as to whether the omission was intentional or inadvertent. We observe, however, that Piping admitted to probably having actual knowledge of the terms of the General Conditions and had agreed in its proposal to Ford to perform the work called for "in accordance with * * * General Conditions dated 11-1-56, revised January, 1957; as prepared by the Ford Motor Company * * *." On the basis of Piping's actual knowledge of the terms of the General Conditions, Piping's prior promise to abide by the General Conditions, and the fact that the General Conditions supplement was supposed to have been attached to the contract, we cannot say that the failure to attach the General Conditions supplement negated the clear and obvious intent of the parties that the "Buyer's General Conditions for Lump Sum Construction Contracts dated 1/57, attached hereto are made a part of the terms and conditions of this purchase order."

■■ In *Dalgarn v. New Orleans Land Co.* (1927), 162 La. 891, 899, 111 So. 271, 274, the Louisiana Supreme Court held that a clause "having been accidentally omitted from the contract, and having formed a part of the specifications upon which plaintiff bid, should be treated as a part of the contract." The instant case is somewhat different because it is not clear that the omission was accidental, but we feel that the same conclusion must be reached. Where a party to a contract has actual knowledge of the terms of a clause that is incorporated by reference as an attachment, but is not actually attached, the clause must be considered to be a part of the contract so that the contract is given the effect intended by the parties.

■■ Since the terms of the General Conditions supplement were part of the contract between Ford and Piping, and the General Conditions supplement contained a provision whereby Piping promised to indemnify Ford for any losses arising from the work called for in the contract, we hold that the trial court properly held Piping liable upon the indemnification clause and properly directed a verdict for Ford and against Piping.

We turn now to the appeal of Armstrong Contracting and Supply Corporation against Piping Systems, Inc. Armstrong contends that its contract with Piping reflects Armstrong's promise to indemnify Piping for any losses arising from Armstrong's work under the contract, and that Piping's instant liability arose exclusively from Piping's separate contract with Ford, not from Armstrong's work under the contract. Arm-

strong submits that it is not liable for Piping's contractual obligation to Ford and that the trial court erred in directing the verdict in favor of Piping and against Armstrong in Piping's action for indemnification based upon the Armstrong-Piping contract.

The Armstrong-Piping contract provided in part:

"Subcontractor [Armstrong], by reason of this purchase order, hereby assumes the entire and full responsibility and liability for any and all damages, injury, loss and expense of any kind or nature whatsoever to all persons, whether employees or others, and to all property, arising out of or in any manner resulting from the execution of the work provided for in this contract and work incidental thereto, or occurring in connection therewith, whether the same arises from negligence or otherwise, even though such damages, injury, loss or expense are attributable to the joint, concurrent or contributory negligence of Piping Systems Incorporated, its agents, servants and employees from and against any and all such damages, injury, loss and expenses, including attorney's fees and expense of litigation arising out of or in any manner resulting from or occurring in connection with the execution of the work herein provided for and work incidental thereto or occurring in connection with or resulting from the use by subcontractor's subcontractors, agents or employees or others, of any materials, tools, implements, appliances, scaffolding, ways, condition of premises, works or machinery or other personal or real property of Piping Systems Incorporated, or others, whether any claims resulting in any such damages, injury, loss or expense arise under the common law or under any applicable workmen's compensation law or other statute, or otherwise."

The issue in this appeal, therefore, is whether a subcontractor (Armstrong) with the duty to indemnify his general contractor (Piping) "from and against any and all  *  *  *  damages, injury, loss and expenses,  *  *  *  arising out of or in any manner resulting from or occurring in connection with the execution of the work herein provided for" has the contractual obligation to indemnify the general contractor for a loss arising from the general contractor's contractual duty to indemnify the owner (Ford), where the owner is liable under a Structural Work Act action which arose in connection with the subcontractor's work.

Armstrong's first argument is that the Armstrong-Piping contract should be strictly construed against Piping under the rule that indemnity agreements are to be construed strictly against the indemnitee, citing *Tatar v. Maxon Construction Co.* and *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp., supra.* As we discussed earlier, however;

the *Tatar* rule provides that courts will construe contractual indemnification clauses fairly, but requires clear and explicit language before an indemnitee will be indemnified against his own negligence. The issue of the indemnitee's active negligence that marked *Tatar* and *Westinghouse*, are not present in the instant case inasmuch as Piping is not alleged to have been negligent, so we need not concern ourselves with the special rule to be applied in such cases. See *Fosco v. Anthony R. Delisi, General Contractor, Inc.* (1968), 103 Ill.App.2d 457, 464, 243 N.E.2d 871, 875.

The second Armstrong argument we consider concerns the absurd consequences which would follow from including contractual liability in the Armstrong-Piping indemnity provision. It is claimed that if the indemnification clause is interpreted to include Piping's contractual liability to Ford, then Armstrong could become a guarantor of every contractual obligation Piping entered into in connection with Armstrong's contract, such as paying the salaries of Piping's employees.

An indemnification contract is to be given a fair and reasonable interpretation based upon a consideration of all its language and provisions. (*Tatar v. Maxon Construction Co., supra.*) The primary object of the construction of a contract is to give effect to the intention of the parties. (*Gay v. S. N. Nielsen Co.* (1958), 18 Ill.App.2d 368, 152 N.E.2d 468.) Therefore, we must determine the intended scope of the contract.

The contract provides that Armstrong will be liable to Piping for Piping's losses arising out of the execution of the Armstrong contract "whether any claims resulting in any such damages, injury, loss or expense arise under the common law or under any applicable workmen's compensation law or other statute, or otherwise." Armstrong argues that this language demonstrates that the parties were thinking primarily of either tort or statutory liability in the indemnification clause so that the scope of the indemnification clause would be to cover losses where any claims against Piping are grounded in either tort or statutory liability, not contractual liability. In this appeal, Armstrong contends that the claim against Piping is contractual in nature, and therefore not intended to be covered by the indemnification clause. We do not agree.

In the instant case there is no question but that the underlying claim of Ford against Piping is related to Ford's liability under the Structural Work Act, which is directly related to Armstrong's work under the contract. Piping argues that the circuitry of action should not defeat Piping's claim against Armstrong; that is, it should be irrelevant that Piping is contractually liable to Ford inasmuch as the impetus for that claim arose from Armstrong's work. We find no express language to indicate that the parties intended that a circuitous action such as in the instant case would defeat the liability imposed by the indemnification clause of the contract.

Rather, it is quite clear that Armstrong assumed liability for all injuries and losses "arising out of or in *any* manner resulting from the execution of the work provided for in this contract * * *." We believe the language *in any manner* is broad and inclusive, and demonstrates the intent of the parties that Armstrong should be liable to Piping even when Piping is liable through the indirect contractual action of an indemnification clause for a loss arising from Armstrong's work under the contract.

Armstrong contracted to indemnify Piping "whether any claims resulting in any such damages, injury, loss or expense arise under the common law or under any applicable workmen's compensation law or other statute, *or otherwise.*" We think that the use of the word "otherwise" indicates that the parties contemplated that actions other than those listed in the contract may be brought against Piping as a result of Armstrong's work under the contract, and that it was intended that Armstrong should be liable to indemnify Piping against such actions, should they arise.

■■ Accordingly, we are of the opinion that the subcontractor (Armstrong) promised to indemnify the general contractor (Piping) against all actions arising from the subcontractor's work under the subcontract, whether the actions against the general contractor are directly brought under tort or statute, or indirectly brought under an indemnification clause between the general contractor and the owner (Ford). Compare *Wilson v. Illinois Bell Telephone Co.* (1974), 19 Ill.App.3d 47, 310 N.E. 2d 729.

We hold, therefore, that the trial court properly held Armstrong liable to Piping under the indemnification clause, and properly directed the verdict in favor of Piping Systems, Inc., and against Armstrong Contracting and Supply Corporation.

We affirm the judgment of the circuit court of Cook County in favor of Ford Motor Company against Piping Systems, Inc., and in favor of Piping Systems, Inc., against Armstrong Contracting and Supply Corporation.

Judgments affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.

SUPPLEMENTAL OPINION

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

We granted Armstrong's petition for rehearing so that we might further consider the question of whether the rule in *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1947) 395 Ill.

429, and *Tatar v. Maxon Construction Co.* (1973) 54 Ill.2d 64, applies to the indemnification contract betwen Armstrong and Piping.

Having reviewed the original briefs submitted, the briefs submitted on rehearing, the record, and the cases cited, we have decided to adhere to our opinion affirming the judgments of the circuit court of Cook County.

DEMPSEY and McNAMARA, JJ., concur.