(No. 29415.— )

WESTINGHOUSE ELECTRIC ELEVATOR COMPANY, Appellee,
*vs.* LASALLE MONROE BUILDING CORPORATION, Appellant.

*Opinion filed Sept. 18, 1946—Rehearing denied January 20, 1947.*

BARRETT, BARRETT, COSTELLO & BARRETT (WENDELL H. SHANNER, of counsel,) both of Chicago, for appellant.

ABRAHAM LEPINE (YATES, ROCHE & GROTEFELD, of counsel), both of Chicago, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant seeks reversal of a judgment of the Appellate Court, First District, affirming a judgment of the superior court for $5500 against it, based upon sections 6 and 29 of the Workmen's Compensation Act.

Appellee contracted to reconstruct certain elevators in appellant's building. An employee of appellee, one Reichert, was so injured, by the falling of one of the elevators being worked upon, that he died. Appellee paid compensation and sued to recover the amount so paid on the ground that the injury of which Reichert died was occasioned through the negligence of appellant's servants.

It appears that one Castiglia, an employee of appellant, on request of a subcontractor, moved one of the elevators to the top of the building fourteen stories high, after getting consent to do so of one Sparks, one of the engineers of appellant's building. After taking the elevator up, Castiglia put it on neutral and left it with no one attending it. The cage broke loose from its moorings and fell to the ground and in so doing caught Reichert who had his head in the elevator shaft on the tenth floor, in the performance of his duties, so injuring him that he died. It is conceded that Castiglia was in the employ of appellant, and that the injury and death of Reichert was due to Castiglia's negligence in leaving the elevator untended. The main contention of appellant is that under the contract it had with appellee, the latter agreed to indemnify it against such damages as arose in this case. It is also argued that Sparks had no authority to direct Castiglia to take the elevator to the top of the building and, as there was no proof that Sparks had such authority, there was therefore no evidence in the record which created a fact question for the jury, and appellant is not precluded from review on assignment of error here. It is also argued that the trial court committed prejudicial errors in the trial of the case, both as to admission of evidence and in instructing the jury.

Both appellant and appellee were operating under the Workmen's Compensation Act. The two most westerly elevators of appellant's building, including the one where the accident occurred, were turned over to appellee during reconstruction. Solid barricades were built on each floor and the old door frames or grills were removed. A door in each barricade, usually kept locked, was the only access to No. 1 and 2 elevator wells.

But three workmen were on the job when the accident occurred, Reichert, an employee of appellee, one Rotchford and one Daley, employees of a subcontractor taking out the grills of the old elevators. Rotchford requested Castiglia, an elevator operator in the employ of appellant, to take car No. 1 to the fourteenth floor. Castiglia obtained instructions from Sparks, one of appellant's engineers and the only one of appellant's engineers then on the job, and took the elevator up to the fourteenth floor, and, as we have seen, put the lever in neutral, and, after a few minutes, left by way of the barricade door, which he locked. He returned to the first floor in another car.

Before the work started it was understood between appellee's superintendent and one Harr, building superintendent of appellant, that appellee was to have entire control of the elevator shafts and wells. One Keith, an elevator operator, testified that he received instructions from Harr, prior to July 21, 1939, not to operate elevators when construction was underway. Harr was not available and did not testify. The contract required appellee to have a superintendent or responsible person present on the work at all times. Wallace J. O'Brien was the only person meeting that requirement, and he was supervising other jobs at the time and was not present at the time of the accident.

The language of the contract, upon which appellant's affirmative defense was based, reads as follows:

"The contractor agrees to provide and pay compensation for injuries sustained by any of his employees arising

out of or in the course of employment on the within mentioned building, in accordance with the requirements of the State Laws, and further agrees to carry insurance in a company satisfactory to the owner fully protecting himself, the Architects and Engineers, the Consulting Engineer, and the Owner against claims which may be made under said laws and agrees to deposit said policy or a true copy thereof (or a certificate from the Insurance Company issuing said policy, showing insurance in force) with the Architects and Engineers. * * *

"The contractor further agrees to indemnify and hold the owner, the owner's employees and agents, the Architects and Engineers, and the City of Chicago, wholly harmless from any damages, claims, demands or suit by any person or persons arising out of any acts or omissions by the Contractor, his agents, servants or employes in the course of any work done in connection with any of the matters set out in these specifications, and the contractor shall carry at his own expense insurance in a company satisfactory to the owner to cover the aforesaid liabilities."

The question first to be considered is whether the clauses of the contract quoted were broad enough to indemnify and save appellant harmless from all claims or demands arising out of the death of appellee's employee and as a matter of law precluded appellee's cause of action. Appellant insists that these provisions of the contract are broad enough to indemnify appellant against all claims made by appellee against appellant, including injuries to appellee's employees received through the negligence of appellant's employee Castiglia.

It is a general rule governing the construction of contracts that unless a contract is ambiguous, its meaning must be determined from the words used; and courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein. (*Englestein* v. *Mintz,* 345 Ill. 48.) In construing a contract

which purports on its face to be a complete expression of the entire agreement, courts will not add thereto another term, about which the agreement is silent. *Green* v. *Ashland Sixty-Third State Bank,* 346 Ill. 174.

The language of the second quoted paragraph of the contract is plain and unambiguous. Appellee agreed to indemnify and hold appellant, its employees and agents wholly harmless from any damages, claims, demands or suit by any person, arising out of any acts or omissions by appellee, its agents, servants or employees in the course of any work done in connection with any matters set out in the contract.

It seems clear that by such language the agreement to indemnify appellant was specifically limited to acts or omissions by appellee, its agents, servants or employees. Any other construction would require the addition of words not used and add thereto conditions and terms about which the contract is silent. The contract contains no words specifically providing that appellee was to indemnify appellant against the negligence of appellant's employees. Appellant contends that the language of the first clause quoted herein is broad enough to include indemnity against claims arising as this one. The argument is that the agreement of the contractor to "carry insurance in a company satisfactory to the owner fully protecting himself, the Architects and Engineers, the Consulting Engineer, and the Owner against claims which may be made under said laws," is broad enough to cover this case.

It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, (*Sinclair Oil Co.* v. *Thornley,* 127 Fed. 2d 128; *Doughnut Machine Corp.* v. *Bibbey,* 65 Fed. 2d 634,) or such intention is expressed in unequivocal terms. *Thompson-Starrett Co.* v. *Otis Elevator Co.* 271 N. Y. 36, 2 N.E. 2d 35; *Employers*

*Liability Assur. Corp. Ltd. of London Eng.* v. *New York Linen Supply & Laundry Co.* 239 N. Y. 560, 147 N.E. 195; *Manhattan Railway Co.* v. *Cornell*, 54 Hun. 292, 7 N.Y.S. 557, affirmed in 130 N. Y. 637, 29 N.E. 151.

In *Perry* v. *Payne*, 217 Pa. 252, 66 Atl. 553, the defendant contractors gave a bond to indemnify the owners against damages arising from accidents to persons employed in the construction of, or passing near, the work. After the owner took possession of the building additional work was required to be done by the contractor. By reason of the negligent operation of an elevator by a servant of the owner, an employee of a subcontractor was killed while engaged in painting the elevator shaft. In holding that, under the bond of the contractors, the owner was not entitled to recover from them the amount of the judgment obtained against the owner for the death of the employee, the court held that a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitees, unless it is so expressed in unequivocal terms. It was there pointed out that liability on such an indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility, unless the contract puts it beyond doubt by express stipulation.

Appellant insists that appellee breached its covenant to provide insurance for appellant's protection, therefore as a matter of law, appellee cannot impose upon appellant a loss, which, but for such breach, would have been borne by an insurance carrier.

To adopt this construction of the contract would impose on the contractor the duty to indemnify against injuries entirely without his control, and such should not be adopted in the absence of clear language in the contract including injuries arising from the negligence of appellant's own

servants. Our conclusion is that the trial and Appellate courts correctly construed the contract, and, unless there is procedural error, the judgment must be affirmed.

Appellant's next contention is that there is no evidence in the record which created a fact question for the jury. This contention is based upon the assumption that the Appellate Court affirmed the judgment of the trial court under the mistaken impression that Sparks testified that the "engineer of the building was the boss of the elevator starter," without which erroneous assumption that court could not have concluded that, while Castiglia was in charge of the car, he acted by the direction of Sparks, and so was in the course of his employment as an employee of the defendant.

It is not disputed that elevators 1 and 2 were shut down insofar as being operated by appellant in the operation of its building. It is equally clear that in making the repairs contemplated by the contract, the elevators would have to be moved at different times to enable appellee to fulfill its contract. To accomplish this, it was necessary that employees of appellant be on duty, of whom only the engineer and elevator operator were present and apparently in charge of the machinery which operated the elevators. It is not necessary to state the testimony of witnesses regarding the operation of elevator No. 1 which caused the injury to appellee's employee. Suffice it to state that Sparks' testimony that he was the sole engineer on duty, with complete control of the machinery which operated the elevators, that Castiglia asked for and obtained permission to take elevator No. 1 to the fourteenth floor, that he, Sparks, operated the machinery in the engine room so that that elevator could be operated and that he gave permission to Castiglia to operate the car, is not disputed. It is also undisputed that Castiglia put the operating lever in a neutral position and left the car. It is also not denied that the custom was

never to leave a car without an operator, unless specifically instructed so to do. That evidence presented a fact issue for the jury which, by its finding and judgment thereon, and affirmance by the Appellate Court, is final and not reviewable by this court.

It is next contended that the trial court committed prejudicial error in its rulings on the evidence. It will not be necessary to state the questions and answers objected to for two reasons: first, many of the objections assigned no reason therefor and, as to questions propounded to expert witnesses, both parties were alike responsible for the error. Errors committed in that regard were not such as to require reversal of the judgment.

It is next contended the trial court erred in refusing to give instructions tendered by appellant and in giving appellee's instructions. The first refused instruction told the jury that plaintiff could not recover if any employee of appellee was guilty of any negligence which approximately contributed to cause the injury. It was not error to refuse to give that instruction as it did not limit the negligence of any employee of appellee to an act occurring in the course of his employment, and, if given, would have required appellee to assume a greater burden than the law required of him. The second refused instruction was covered by other instructions and concerned an undisputed matter. Refused instructions 3 and 5 called for conclusions of law, singled out one particular act of negligence, were misleading, and directed a verdict. It was not error to refuse to give them.

We find no reversible error in the record. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*