**GEORGE SOLLITT CONSTRUCTION COMPANY, a corporation, Plaintiff-Appellee,**

v.

**GATEWAY ERECTORS, INCORPORATED, a corporation, Defendant-Appellant, and The Fidelity and Casualty Company of New York, a corporation, Defendant.**

**No. 12312.**

United States Court of Appeals Seventh Circuit.

Oct. 22, 1958.

Rehearing Denied Nov. 18, 1958.

---

Harold W. Huff, Chicago, Ill., Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill. (A. R. Peterson, Owen Rall, Herbert C. Loth, Jr., Chicago, Ill., of counsel), for defendant.

Robert B. Johnstone, Charles J. O'Laughlin, Chicago, Ill. (L. H. Vogel, Chicago, Ill.), for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Gateway Erectors, Incorporated, a corporation,[1] has appealed from a judgment of the district court in favor of plaintiff, entered in an action at law in which the cause was submitted to the court on the pleadings and a stipulation of facts. Plaintiff's action was brought to recover damages for an alleged breach of an indemnity clause appearing in each of two written agreements between it and Gateway. The judgment was for $112,239.08 and costs. The judgment also dismissed Gateway's insurer, The Fidelity and Casualty Company of New York, a corporation,[2] as a defendant, without prejudice, evidently because the action against it was premature, and the propriety of that dismissal is not challenged.

We now set forth a statement of the established relevant facts.

The University of Chicago contracted with the United States of America to design and construct a hospital in Chicago, and, under date of June 12, 1950, the University by contract awarded a portion of the work thereunder to plaintiff. The latter contract refers to plaintiff as the contractor, and provides:

"Article XII—Liability For Damage To Persons And Property

"1. The Contractor assumes entire responsibility and liability for losses, expenses, damages, demands, and claims in connection with or arising out of any injury or alleged injury (including death), or damage or alleged damage to property, sustained or alleged to have been sustained in connection with or to have arisen out of the performance of the work by the Contractor, its subcontractors and their agents, servants, and employees, including losses, expenses, or damages sustained by the University or the Government, and

---

1. Herein referred to as Gateway.

2. Herein referred to as Fidelity.

shall indemnify and hold harmless the University (and the Board of Trustees of said University, individually and collectively), and the Government, the agents, servants, and employees of the foregoing from any and all such losses, expenses, damages, demands and claims, and shall defend any suit or action brought against them, or any of them, based on any such alleged injury or damage, and shall pay all damages, costs, and expenses, including attorney's fees, in connection therewith or resulting therefrom.

"2. 'Injury' or 'damage', as those words are used in Section 1 of this Article, shall be construed to include, but not be limited to, injury or damage consequent upon the failure or use or misuse by Contractor, its agents, servants, and employees, of any hoist, rigging, blocking, scaffolding or any and all other kinds of equipment, whether or not owned, furnished by the University or the Government."

By two written contracts, dated June 22, 1950 and December 8, 1950, in which plaintiff was referred to as party of the first part and Gateway was referred to as party of the second part, Gateway was employed by plaintiff to do the steel reinforcing and certain allied work. Each of said contracts provided, in part, as follows:

"the party of the second part [Gateway] will fully relieve the party of the first part [plaintiff] of all responsibility for furnishing and completing all of the Erection of Reinforcing Steel and Reinforcing Steel Mesh under said first party's general contract with University of Chicago hereinafter designated Owner, for the erection of the above named building; and that the conditions of said contract between the party of the first part and said Owner dated June 12, 1950, are made a part of this agreement; further, that all rights and stipulations of the Architects and Owner on said work shall be as agreed upon in said General Contract.

\* \* \* \* \* \*

"Party of the Second Part [Gateway] Agrees as Follows:

\* \* \* \* \* \*

"Article 3. [A] That he will save the party of the first part, the Owner, and the Architect free and harmless against any expense, loss, cost or damage arising from or on account of:

"1. Injuries to party of the second part and his employees.

"2. Injuries to the public.

"3. Damage to property caused by party of the second part, his employees, agents, and subcontractors.

"4. Any negligence or carelessness of party of second part, his agents, employees, and subcontractors.

"[B] That before entering upon the performance of this contract, the party of the second part will procure, at his own expense, insurance covering the above-mentioned liabilities from insurance companies, and in amounts and limits satisfactory to party of the first part, and that said insurance will be kept in full force and effect at all times while this contract shall remain in force and not fully performed on his part, such insurance coverage to be evidenced by certificates of insurance delivered to party of the first part.

"[C] That if the party of the first part so elects, party of the second part will furnish a satisfactory indemnity accident policy protecting party of the first part and the Owner in case of accident to party of the second part, his agents, employees, subcontractors, or the public, and that if any suits are entered against party of the first part or the Owner on account of acts or omissions by party of the second part, his agents, employees or subcontractors, the

party of the second part will defend such suits and reimburse either or both the party of the first part or the Owner for any expense, costs, loss or damage they may be put to, including court costs and attorneys' fees." [3]

A certificate of insurance issued by Fidelity shows that Gateway was the insured in a policy or policies issued by Fidelity, in effect from April 1, 1951 to April 1, 1952. To the certificate was attached a contractual agreement executed by Fidelity under date of June 22, 1950 as an endorsement to a public liability insurance policy issued by Fidelity to Gateway, which agreement reads in part as follows:

"B—Liability for Damage to Persons and Property.

"1. The Sub-Contractor assumes entire responsibility and liability for losses, expenses, damages, demands, and claims in connection with or arising out of any injury or alleged injury (including death), or damage or alleged damage to property, sustained or alleged to have been sustained in connection with or to have arisen out of the performance of the work by the Sub-Contractor, its Sub-Contractors and their agents, servants, and employees, including losses, expenses, or damages sustained by the Contractor, the University or the Government, and shall indemnify and hold harmless the Contractor, the University (and the Board of Trustees of said University, individually and collectively), and the government, the agents, servants, and employees of the foregoing from any and all such losses, expenses, damages, demands and claims, and shall defend any suit or action brought against them or any of them, based on any such alleged injury or damage, and shall pay all damages, costs, and expenses, including attorney's fees, in connection therewith or resulting therefrom.

"2. 'Injury' or 'damage,' as those words are used in Section 1 of this Article, shall be construed to include, but not limited to, injury or damage consequent upon the failure or use or misuse by subcontractor, its agents, servants, and employees, of any hoist, rigging, blocking, scaffolding or any and all other kinds of equipment, whether or not owned, furnished by the Contractor, the University or the Government." [4]

It will be noted that the contractual agreement which Gateway procured from Fidelity, dated June 22, 1950, in paragraphs 1 and 2 thereof used precisely the language of the contract between the University and plaintiff, with the exception that Gateway is referred to as the subcontractor, while in the University contract with plaintiff, the latter is referred to as the contractor.

On January 22, 1952, Philip Shoevlin was employed by Gateway as a metal worker in connection with the construction work on the hospital which was then being erected, pursuant to said contracts. While he was removing certain equipment at the 7th floor from a hoist provided by plaintiff, it fell to the ground, injuring Shoevlin. The fall of said hoist was caused by a defective "dog" which served to engage a gear on the hoist

3. The alphabetical designations of the three paragraphs of Article 3 were inserted by us for convenience of reference thereto.

4. The contractual agreement also provided: "This endorsement shall not be binding upon the company unless countersigned; nor shall anything contained herein be held to waive, alter, change or extend any of the conditions, limits, provisions, agreements, statements or declarations of *the policy* other than as above stated." (Italics supplied for emphasis.) It is evident that, when the foregoing contractual agreement was executed by Fidelity under date of June 22, 1950, there was one of its policies *outstanding insuring Gateway*, similar to the policy in effect from April 1, 1951 to April 1, 1952. This inference is clear from several facts, including the fact that Gateway's first contract with plaintiff was dated June 22, 1950, ante 3.

drum, or some other negligence or breach of duty by plaintiff or its employees.

Shoevlin sued plaintiff in a state court to recover damages on account of his injuries. Immediately plaintiff's insurer, Liberty Mutual Insurance Company, demanded that Fidelity assume the defense of the suit, which Fidelity refused to do. The case was tried and a judgment for $140,000 was entered in favor of Shoevlin. Pending appeal, Gateway and Fidelity were notified that an agreement had been reached by plaintiff's attorneys to settle the judgment for $90,000 and demand was made that Gateway "take over this matter and indemnify" plaintiff.

Plaintiff paid $90,000 to Shoevlin and no question is here raised as to the propriety of such settlement. Plaintiff also paid $4,000 in attorneys' fees incurred in defense of the Shoevlin case and investigation costs of $590.80.

Plaintiff does not claim that the occurrence giving rise to Shoevlin's judgment was occasioned by the negligence of others than plaintiff or its employees. It is admitted that the injuries were sustained by Shoevlin while he was in the employ of Gateway when a hoist used by him in such employment fell on the premises of the hospital during his regular hours of employment at the construction work being performed by Gateway under its contracts with plaintiff.

There is no dispute among the parties that Illinois law governs the questions now presented to us.

In Westinghouse Electric Elevator Co. v. La Salle Monroe Bldg. Corp., 395 Ill. 429, 70 N.E.2d 604, 606, the court considered the language of a contract between contractor Westinghouse and the owner of a building in which the contractor agreed to reconstruct certain elevators. An employee of the contractor was fatally injured by the falling of one of the elevators being worked upon, due to negligence of an employee of the owner, which contended that, under its contract, the contractor agreed to indemnify it against damages arising from the employee's injury and death. The contract provided:

" 'The contractor agrees to provide and pay compensation for injuries sustained by any of his employees arising out of or in the course of employment on the within mentioned building, in accordance with the requirements of the State Laws, and further agrees to carry insurance in a company satisfactory to the owner fully protecting himself, the Architects and Engineers, the Consulting Engineer, and the Owner against claims which may be made under said laws and agrees to deposit said policy or a true copy thereof (or a certificate from the Insurance Company issuing said policy, showing insurance in force) with the Architects and Engineers. * * *

" 'The contractor further agrees to indemnify and hold the owner, the owner's employees and agents, the Architects and Engineers, and the City of Chicago, wholly harmless from any damages, claims, demands or suit by any person or persons arising out of any acts or omissions by the Contractor, his agents, servants or employees in the course of any work done in connection with any of the matters set out in these specifications, and the contractor shall carry at his own expense insurance in a company satisfactory to the owner to cover the aforesaid liabilities.' "

The contractor paid workman's compensation on account of the accident and sued the owner to recover the amounts so paid on the ground that the injury was occasioned through the negligence of the owner. The court said, 395 Ill. at page 433, 70 N.E.2d at page 607, referring to the owner as appellant:

" * * * The contract contains no words specifically providing that appellee was to indemnify appellant against the negligence of appellant's employees. Appellant contends that the language of the first clause quoted herein is broad enough to include

indemnity against claims arising as this one. The argument is that the agreement of the contractor to 'carry insurance in a company satisfactory to the owner fully protecting himself, the Architects and Engineers, the Consulting Engineer, and the Owner against claims which may be made under said laws,' is broad enough to cover this case.

"It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, * * * or such intention is expressed in unequivocal terms. * * * "

The court cited Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173, which held that a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnities, unless it is so expressed in unequivocal terms. It pointed out that liability on such an indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility, unless the contract puts it *beyond doubt by express stipulation.*

Does the language of Article 3 of the contracts between plaintiff and Gateway, *beyond doubt by express stipulation* show that Gateway intended to assume such responsibility? Obviously there is no such express stipulation. Is a construction of Article 3 as an indemnification of plaintiff against its own negligence required by clear and explicit language in said article, or is such intention expressed in unequivocal terms?

A reading of paragraph A thereof not only fails to show even an approach to these requirements, but reveals confusion in regard to what the paragraph actually does mean. It purports to list the events covered by the indemnity in four items. The first two items mention injuries (which we shall assume means personal injuries) and the third item mentions damage to property. None of these items refers to the acts *causing* the injuries or the damage.

The fourth item does not mention either injuries to persons or damage to property but is limited to "any negligence or carelessness of Gateway, his agents, employees and subcontractors". Negligence, unless it causes an injury or damage, is not actionable. Obviously if we attempt to consider the fourth item separately from the preceding three items, we are frustrated, because neither negligence nor carelessness without an injury to another or damage to another's property can result in expense, loss, cost or damage to plaintiff, or anyone else. It therefore seems necessary to combine the fourth item with some one of the first three items in order to give sense to paragraph A. That this must be done is also indicated by the fact that, even if we were to attempt by implication to add to the language of items 1 and 2 and thereby to include actionable negligence of Gateway, we would to that extent be rewriting the indemnity undertaking. Certainly we would not then be meeting the exacting requirements of the Westinghouse case which does not countenance our rewriting the contract in order to make it clear and explicit, or in order to supply unequivocal terms. In fact, the absence of express stipulation in the language used is only emphasized by any attempt to amplify it.

If the draftsman of paragraph A intended that plaintiff should be indemnified by Gateway against losses arising from injuries to employees of Gateway and injuries to the public, caused by the negligence of plaintiff or its employees, the Illinois law required that an express reference to the negligence of plaintiff should have been incorporated. Such language is not in paragraph A and Illinois law does not permit us to engraft it thereon.

While item 2, reading "injury to the public." is not directly involved in this case, the curious isolation of those words

has some significance in our problem of construction. Some of the questions arising are: 1. Injuries caused by whom? 2. Are said injuries sufficient to saddle Gateway with a duty to indemnify plaintiff, if caused by another subcontractor's employees? 3. Must negligence of Gateway be the cause of said injuries? and so on *ad infinitum*.[5]

Contending that Gateway's obligation to save plaintiff harmless for injuries to Gateway's employees is "absolute", "unqualified", "clear", "unequivocal" and "unlimited", plaintiff looks to the entire language of Article 3, but in justifying that contention it sloughs off item 4 as a "catchall", because it imposes "an obligation which would be imposed by law in any event". It stands squarely on item 1 as applicable to this case and refuses to recognize that the language of item 1 must be read with item 4, which in our opinion is not a superfluous catchall inserted to impose an obligation which, in the words of plaintiff's counsel, "would be imposed by law in any event". Plain-

tiff's method of reasoning is not a reliance upon either clear and explicit language or an expression of intention in unequivocal terms, as required by Illinois law.

We hold that Gateway did not indemnify plaintiff against damages resulting from Shoevlin's accident.

The views herein expressed are consistent with the state law as set forth in Russell, for Use of Continental Casualty Co. v. Shell Oil Co., 339 Ill.App. 168, 170, 172, 89 N.E.2d 415; Northern States Co., Inc., v. A. Finkl & Sons Co., 8 Ill.App.2d 419, 422, 132 N.E.2d 59; Insurance Co. of North America v. Elgin, J. & E. Ry. Co., 7 Cir., 229 F.2d 705, 707, 712; Indemnity Insurance Co. of North America v. Koontz-Wagner Electric Co., 7 Cir., 233 F.2d 380, 382; and United States v. Starks, 7 Cir., 239 F.2d 544, 545, 547, which plaintiff cites.

For these reasons, the judgment of the district court is reversed.

Reversed.

---

5. The following thoughts are in no way used as a basis for the foregoing opinion.

While it is not necessary that we should solve the mystery surrounding the arrangement and punctuation in paragraph A, we are tempted to suggest that a restatement of paragraph A in one continuous sentence, eliminating the indentations and item numbers (which we believe are artificial), shows that in some prior draft it *did* consist of a single sentence, which may even now be reconstructed in the following form:

"That he will save the party of the first part, the Owner, and the Architect free and harmless against any expense, loss, cost or damage arising from or on account of     injuries to party of the second part and his employees     injuries to the public, [and]     damage to property, caused by party of the second part, his employees, agents, and subcontractors [by] any negligence or carelessness of party of second part, his agents, employees, and subcontractors."

This reconstructed sentence indicates that the essential purpose of paragraph A is to limit the liability of Gateway as an indemnitor to the results of the negligence of itself, its agents, employees and subcontractors. There is no negligence charged against Gateway. It is stipulated that the only negligence causing the death of Shoevlin was that of plaintiff.

While punctuation, used wisely, is an effective aid in conveying the meaning of language, Grengs v. Twentieth Century Fox Film Corp., 7 Cir., 232 F.2d 325, 328, an inept use of paragraphing, commas and periods, can obscure the meaning of otherwise clear language.