EZRA LEACH, Plaintiff, *v.* HOWARD EYCHANER, d/b/a BLUE VAN AND STORAGE *et al.,* Defendants, Third-Party Plaintiffs-Appellants.— (ARVIDSON CABINET CO., Third-Party Defendant-Appellee.)

(No. 70-209; ▮▮▮▮▮▮)

Second District—August 24, 1971.

328

Williams, McCarthy, Kinley and Rudy, of Rockford, for appellant.

Sype and Kalivoda, of Rockford, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiffs appeal the trial court's judgment on the pleadings which dismissed their third-party complaint for a failure to state a cause of action.

The sole issue is whether an indemnity agreement between the parties, contained in a leasing arrangement, indemnified the plaintiffs against their own negligence with respect to the injury claimed.

The pleadings show that the defendant, Arvidson Cabinet Co., rented the first floor of a warehouse from Mildred Eychaner, d/b/a Allied Warehouses, with the exception of certain space occupied by her husband, Howard Eychaner, d/b/a Blue Van and Storage (hereinafter, plaintiffs). The lease contained a provision, a portion of which stated:

"* * * and that ARVIDSON will at all times protect, indemnify and save and keep harmless ALLIED WAREHOUSES and BLUE VAN & STORAGE against and from any and all loss, cost, damage or expense, arising out of or from any accident or other occurrence on or about said premises, causing injury to any person or property whomsoever or whatsoever * * *."

Later, plaintiff jointly rented a gasoline lift truck to defendant. Defendant's employee, Leach, was injured when the truck exploded while he was operating it. Leach sued plaintiffs, alleging in one of the counts, that they were negligent. Plaintiffs then filed a third party complaint against defendant asserting indemnity for all damages recovered by Leach, relying on the indemnification covenant of the warehouse lease. This third party complaint alleged the existence of the truck rental lease but the lease itself was neither attached or described. Defendant's motion

to dismiss the third party complaint for failure to state a cause of action was granted.

Plaintiffs' argument states the pertinent law, reviews cases containing similar language, attempts to distinguish the cases relied upon by the trial court, and claims the intent of the provision was to provide indemnity for the accident in question.

■ We agree with plaintiffs concerning the applicable law. It provides that contracts for indemnification against the indemnitees are not against public policy. (*Patent Scaffolding Co. v. Standard Oil Co.* (1966), 68 Ill.App.2d 29.) Such contracts are to be construed in the same manner as other contracts, and the primary rule of construction is that the court must seek to ascertain the intentions of the parties at the time of the contract by an examination of the contract as a whole. (*Gay v. S. N. Nielsen* (1958), 18 Ill.App.2d 368, 374.) While no exact form of language is necessary for the indemnification to occur, the provisions must be "carefully scrutinized and strictly construed; they must clearly show the intention of one party to protect itself from claims arising from its own acts of negligence and the intention of the other to assume these obligations." *DeTienne v. S. N. Nielsen Co.* (1963), 45 Ill.App.2d 231, 233; *Westinghouse Co. v. Bldg. Corp.* (1947), 395 Ill. 429, 433.

Plaintiffs claim that the language, "any and all", employed in the lease, is sufficiently broad to indemnify them against their own negligence. *United States Steel Corp. v. Emerson-Comstock Co.* (N.D. Ill. 1956), 141 F. Supp. 143.

In our view the nine "similar" cases cited by plaintiff are of no avail in the present circumstances. In each case the indemnification provision contained language limiting the scope of the covenant to injuries arising out of the performance of the agreement in which the provision appeared. For example, in *Bentley v. Palmer House Company* (1964), 332 F.2d 107, an exhibitor rented space in a convention hall under an agreement whereby the exhibitor agreed to indemnify the hotel "from and against any and all liability and expenses for personal injury and property damage or loss arising from or out of the use by the exhibitor of its exhibit space or its activity in connection herewith, * * *." (p. 108) When Bentley, an injured employee of the indemnitor, sued, the Court held the language any and all" to be "clear, explicit and unambiguous and demonstrates to our satisfaction that the intention of the parties was to provide indemnity for appellants against their own negligence." (p. 111)

The strict construction, which we adopt, receives support from *Halperin v. Darling & Co.* (1967), 80 Ill.App.2d 353 and *Ford Motor Company v. Commissary, Incorporated* (N.D. Ill. 1968), 286 F.Supp. 229.

In *Halperin*, L. & L. Auto, defendant, leased a truck to plaintiff. The lease required defendant both to furnish the truck and to maintain it and contained an agreement by plaintiff to indemnify and save harmless the defendant from "* * * any loss or liability whatsoever with respect to or arising out of or in the course of the operation of any truck leased hereunder * * *." Plaintiff was injured by the truck, allegedly due to faulty maintenance by defendant. The Appellate Court construed the contract by saying the injury did not arise from the operation of the vehicle and that defendant should not have been dismissed out of the suit. The court continued, "No intention is manifest through any wording in the contract that L. & L. Auto be held harmless from damages arising out of its own negligence in the maintenance of the vehicle. If it was intended that plaintiff save L. & L. Auto harmless from its own negligence in this regard the contract should have provided that the lessee would hold the lessor harmless from liability arising out of 'the operation or the maintenance' of the truck, or wording which otherwise manifested such intention."

In *Ford Motor Company*, defendant operated a commissary in plaintiff's plant. Defendant's employee slipped on a wet floor, a condition caused by a leaking kettle. Plaintiff had notice of the leak, but had failed to repair it. The employee received a judgment from plaintiff and plaintic sued defendant for indemnification. The contract provided defendant would hold plaintiff harmless for injuries arising "out of the operation of said cafeteria." The word "operate", however, was used in two senses in the contract: in one sense, the defendant was to operate the cafeteria; in the other, plaintiff was to furnish and maintain the equipment for the operation of the cafeteria. The court concluded that the word "operation", as used in the indemnity provision, meant that defendant agreed to indemnify Ford for any losses Ford might suffer as a result of the manner in which Commissary performed or failed to perform the duties imposed upon it in the operation of the commissary and thus Ford was liable for its failure to perform its duties in the maintenance of the cafeteria.

Thus, these courts limited the application of the indemnity provision to the exact wording in the clause even though there was language in other provisions in the contract which could be construed to provide more expansive protection. Here we limit the application of the provision to the intent of the parties as expressed in our reading of the contract as a whole.

We are not persuaded by plaintiff's attempts at distinguishing two cases cited by the trial court in its memorandum opinion. In *Westinghouse Co. v. Bldg. Corp., supra,* the court merely enunciated the estab-

lished rules of construction which we have set out above. In *Schek v. Chicago Transit Auth.* (1969), 42 Ill.2d 362, the court found that the injury incurred was within the scope of the intention of the parties because defendant's negligence was expressly included and the incident occurred while in performance of the agreement.

Our disagreement with plaintiffs arises in the construction of the scope of injuries for which the indemnification was intended. Plaintiffs would read the portion, "arising out of or from any accident or other occurrence on or about said premises", as covering any conceivable type of injury on the premises, including, as counsel stated in oral argument, an automobile accident between the parties in the parking lot of the warehouse.

██ The indemnity clause herein, contained no express statement covering the plaintiffs' own negligence (as found in *Schek*); nevertheless, we believe the verbiage used sufficient to indemnify plaintiffs from their own negligence when such acts related to the leasing of the premises. *Rios v. Field* (Ill.App. 1971), 280 N.E.2d 99, 101. The injury claimed herein, however, did not arise from the use of the premises, but from the use of the fork lift truck. Under the circumstances of this case, we do not believe it was the intent of the parties, at the time of executing the warehouse lease, to extend the conditions of the indemnity clause to cover a separate legal relationship entered into by the parties at a later date.

Consequently, the judgment of the trial court is correct and hereby affirmed.

Judgment affirmed.

ABRAHAMSON and KRAUSE, JJ., concur.