ERNEST C. WHITE, Plaintiff, *v.* MORRIS HANDLER COMPANY, INC. *et al.,* Defendants—(RICHARD M. BARANCIK *et al.,* individually and d/b/a BARANCIK AND CONTE ASSOCIATES *et al.,* Third Party Plaintiffs-Appellees, *v.* ECONOMY PLUMBING & HEATING COMPANY, INC., Third Party Defendant-Appellant.)

(No. 56279;

First District—July 17, 1972.

*Rehearing denied September 7, 1972.*

Lord, Bissell & Brook, of Chicago, (C. Roy Peterson and Richard E. Mueller, of counsel,) for appellant.

Kralovec, Sweeney, Marquard & Doyle, of Chicago, for appellee Morris Handler Co.

Yates, Haider, Hunt & Burke, of Chicago, for appellees Richard M. Barancik *et al.*

Mr. JUSTICE BURKE delivered the opinion of the court:

Third party complaints were filed seeking relief in the nature of a declaratory judgment that the third party defendant was required to indemnify the third party plaintiffs pursuant to a hold harmless clause embodied in a building construction subcontract between the parties, in the event the primary plaintiff in the action recovered damages against the third party plaintiffs for injuries sustained in a fall at the construction site.

All third parties moved for summary judgment on the third party complaints. The trial court entered an order finding that no genuine issue of material fact was created by the third party complaints, the motions for summary judgment and the affidavits filed therewith, and further finding that the hold harmless clause of the subcontract required third party defendant to indemnify the third party plaintiffs, under the authority of *DeTienne v. S. N. Nielsen Co.*, 45 Ill.App.2d 231, 195 N.E.2d 240. The order also entered summary judgment in favor of third party plaintiffs against third party defendant on the former parties' motions for summary judgment and denied the motion for summary judgment filed by the third party defendant. The order also made a specific recitation that there was no just reason to delay enforcement or appeal of the order. Ill. Rev. Stat. 1971, chap. 110A, par. 304(a).

Third party defendant appeals, contending first that the hold harmless clause of the subcontract does not permit indemnity from the third party defendant to the third party plaintiffs for the latter parties' own negligence, and secondly, that in any event, the accident involving the pri-

mary plaintiff did not come within the scope of the pertinent language of the hold harmless clause.

It appears from the record that third party defendant Economy Plumbing and Heating Company, Inc., (hereinafter "Economy") was engaged by third party plaintiff Morris Handler Company (hereinafter "Handler") to perform plumbing work at the construction site as a subcontractor of Handler. Third party plaintiffs Richard M. Barancik and Richard N. Conte, individually and doing business as Barancik and Conte Associates, (hereinafter "Barancik") were the architects of the building under construction in Chicago.

It further appears that the primary plaintiff, Ernest C. White (hereinafter "White"), was employed by Economy at the construction site as an apprentice plumber. At the close of the work day on June 18, 1969, White descended by way of an elevator from the thirtieth floor of the building where he had been working, to the third floor where he put away his tools and changed his clothes in a plumber's shanty. On his way to a stairwall White walked along a concrete walkway, measuring some fifty feet in length and some three feet in width, which was situated along the open edge of the building. There was gravel on the walkway, and when Wilson stepped on the gravel his foot rolled to the side; he lost his balance and fell some thirty-five feet to the ground below, sustaining injuries. No guardrails or handrailings were erected along the walkway.

It also appears that Handler was responsible for the general maintenance and safety conditions around the building site, but that Handler was not responsible for such conditions falling specifically under each of the respective sub-trades on the job. Handler was also in charge of erecting barricades and handrails at "hazardous" areas around the site, and would clear debris from general areas where workmen would pass.

Contained in the construction subcontract entered between Handler and Economy was a clause covering indemnification of Handler by Economy under certain conditions. The pertinent portions of that clause read as follows:

"*  *  *  Subcontractor [Economy] agrees to perform its work in a safe and proper manner and agrees to indemnify, save whole and hold harmless the Contractor [Handler], Owner and Architect [Barancik], to include: (i) the defenses of claims, and costs incurred in connection therewith; (ii) the payment of all penalties for violation of laws, ordinances and regulations; and (iii) all claims and liabilities, including but not limited to claims and liabilities for  *  *  *  injury  *  *  * to persons, ●aused by or resulting from the execution of the work by Subcontractor or occurring in connection therewith, whenever caused by or occasioned directly or indirectly by or to Subcontractor, its

agents, employees, invitees and its Subcontractors; including by way of illustration and not limitation, claims arising out of or under the so-called Workmen's Compensation Act of the State of Illinois, the so-called Safety Appliances Act of the State of Illinois, or arising under the common law or any other statute or rule of law."

■■ A reading of the hold harmless clause demonstrates that Economy agreed to hold Handler and Barancik harmless, not only from Economy's own negligence, but also for Handler's and Barancik's negligence which resulted in injury to any Economy employee. See *DeTienne v. S. N. Nielsen Co.*, 45 Ill.App.2d 231, 195 N.E.2d 240, which is directly in point.

It is unnecessary to analyze the language of the entire hold harmless clause since Economy admits that the clause contains language which constitutes it as a "broad form" indemnity agreement, covering the negligence on the part of the indemnitee. Economy argues, however, that the language, "* * * whenever caused by or occasioned directly or indirectly by or to subcontractor, its agents, employees, invitees and its subcontractors * * *," qualifies the preceding "broad form" language of the clause and limits the indemnification to that of the negligence on the part of the indemnitor alone, thus bringing the instant clause within the limitation contained in the case of *Westinghouse Co. v. Building Corp.*, 395 Ill. 429, 70 N.E.2d 604.

The short answer to Economy's argument is that in the *Westinghouse* case the hold harmless clause contained no language from which it could be said that the indemnitee was to be indemnified from the consequences of its own negligence, whereas in the instant case the "whenever caused by" portion of the clause, which Economy states qualifies the preceding "broad form" language, actually broadens the scope of the character of claims and liabilities encompassed by the indemnity. The "whenever caused by" portion of the clause relates not only to claims and liabilities caused "by" the indemnitor (or its employees), but also claims and liabilities caused "to" the indemnitor (or its employees.) As stated in the *DeTienne* case, the hold harmless clause contains language which is used in "an ever-broadening sequence of responsibility." *DeTienne v. S. N. Nielsen Co.*, 45 Ill.App.2d 231, 236, 195 N.E.2d 240, 243.

■■ Economy contends that even if the instant hold harmless clause is interpreted as a "broad form" indemnity agreement, nonetheless the injury here did not fall within the nature of the claims and liabilities contemplated by the agreement, because White was not injured while in the performance of acts which were the subject matter of the agreement. We disagree.

It appears from the record that White had completed his day's work and was on his way out of the construction site when the accident oc-

curred. Entering and leaving the job site must be said to be normal and inherently essential conditions of a contract of this nature since, obviously, the contract could not be executed by Economy if its workmen were not permitted to enter or leave the job site. White was clearly in the performance of an act contemplated by the subcontract at the time of the mishap.

The cases cited by Economy in support of this position are distinguishable on their facts from the case at bar. See *e.g., LiPetri v. Turner Construction Co.,* 36 Ill.2d 597, 224 N.E.2d 841, where the court on review held that the denial of a claim for indemnity was proper, where the injury occurred in connection with work done under a special contract apart from and not under the contract containing the indemnity clause; (*Ford Motor Co. v. Commissary, Inc.,* 286 F.Supp. 229), where indemnity was denied because the indemnitee, in another portion of the contract containing the indemnity clause, expressly assumed the duty of maintaining the instrumentality which was the ultimate cause of the injury, and which assumption of duty, when read with other portions of the contract, negated the theory that the indemnitor was to indemnify the indemnitee for the later's own negligence. In the instant case, on the contrary, White was in the performance of an act which was within the contemplation of the subcontract, and consequently the hold harmless agreement must be given effect.

Economy's citation to the recently enacted legislation voiding all hold harmless clauses which provide for indemnification for indemnitees for the consequences of their own negligence, as being contrary to public policy, is unavailing. The legislation specifically states that it has prospective effect only, whereas the instant subcontract was entered into prior thereto, but prior to the enactment of that legislation hold harmless clauses providing for indemnificaion of indemnitees against their own negligence were specifically upheld by the courts of this State. Cf. *DeTienne v. S. N. Nielsen Co.,* 45 Ill.App.2d 231, 195 N.E.2d 240. See also Ill. Rev. Stat. 1971, chap. 29, pars. 61—63.

For these reasons the judgment order is affirmed.

Judgment order affirmed.

GOLDBERG, P. J., and LYONS, J., concur.