Frederic C. MUNTWYLER, Plaintiff,

v.

RANGER INSURANCE COMPANY, and
Northwest Airlines, Inc.,
Defendants.

No. 74 C 58.

United States District Court,
N. D. Illinois, E. D.

Dec. 19, 1974.

Stuart D. Perlman, Chicago, Ill., for plaintiff.

William & Monahan, Peterson, Ross, Rall, Barber & Seidel, Chicago, Ill., for defendant Ranger.

Thomas W. Conklin, Conklin, Leahy, & Eisenberg, Chicago, Ill., for defendant Northwest.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes before the Court on the motion of plaintiff for a summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This is a diversity action seeking compensation for property damage.

On or about January 9, 1973, a Convair 640 aircraft, FAA Certificate No. 640 R was brought into defendant Northwest Airlines, Inc. ("Northwest") hangar at Midway Airport. On January 11, 1973 while the aircraft was in the hangar an employee of defendant Northwest caused a passenger stand truck to run into the aircraft causing damage thereto. The only persons present on said occasion were employees of defendant Northwest.

The Convair 640 was owned at all times relevant herein, by the plaintiff. On the above mentioned dates no other person or entity had an ownership or possessory interest in the subject aircraft other than the plaintiff. The aircraft was insured during this period of time by defendant Ranger Insurance Company under policy number ACC8–163650 with plaintiff as the named insured.

Plaintiff requested Richard J. Horetz, a pilot, to have the subject aircraft inspected for its annual FAA checkup. Defendant Northwest's hangar was used for the purpose of making such inspection by personnel to be provided by Mr. Horetz. Defendant Northwest was to provide no services.

Defendant Northwest's employee Alexander Antoszkiewicz, who is a maintenance man at the defendant Northwest's Midway hangar, observed the subject aircraft, which had no identifying marks on it except the FAA number, when it was first towed into the hangar. He was instructed by his superior to have someone sign a form at or about the time the subject aircraft was brought into the hangar. Antoszkiewicz asked a person who was on the tow truck bringing the aircraft in to sign such form. Antoszkiewicz testified in his deposition that this form AC–143 on Northwest was a blank form except for some marks under word "Station" and possibly under "Date/Time Arrival".

Mr. Christensen signed the name of R. J. Horetz followed by his initials, "D. C." and struck out the words "Supplies and/or Services" at the top of the document and inserted his initials near such deletion. As previously stated, plaintiff had instructed R. J. Horetz to obtain hangar space at the airport and Horetz delegated the task of bringing the airplane to hangar to Christensen.

After the accident plaintiff presented claims with both its insurer Ranger Insurance Company and Northwest. Both refused to pay for the cost of repair of the airplane and disclaimed all other possible liability.

Ranger Insurance denied liability claiming that the insurance contract in existence between parties at the time of the complained loss contained an exclusion which provided that:

"*This policy does not apply:*

1. to any liability assumed by the Insured under any contract or agreement or to any loss or damage to the aircraft for which the Insured has assumed a liability of others;"

\* \* \* \* \* \*

(f) While the aircraft is subject to bailment, lease, conditional sale, mortgage or other encumbrance not specifically stated in the Declarations; . . ."

Northwest disclaimed liability on the basis of the form signed by Christensen before the aircraft was admitted to the hangar. It states in part that:

"Northwest Airlines, Inc. is hereby authorized to provide the services above indicated for the undersigned who agrees to indemnify and hold harmless Northwest Airlines, Inc., against any and all claims, expenses or other liability which may arise out of or in connection with performance of such services however caused."

Consequently on the basis of this hold harmless clause Northwest argues that it is not liable for its negligence and that plaintiff assumed such a risk when it rented hangar space from Northwest.

This indemnification clause is the crux of the problem in this lawsuit. If the clause is valid then plaintiff must bear the total loss. Under the insurance agreement plaintiff could not legally extend coverage by executing agreements with third parties. See United States Fidelity and Guaranty Company v. Virginia Engineering Company, Inc., 213 F.2d 109 (4th Cir. 1954); Union Paving Company v. Thomas, 186 F.2d 172 (3rd Cir. 1951); 1 Long, Law of Liability Insurance, §§ 1.11 and 1.12 (1972). Under the agreement for hangar space the clause makes plaintiff allegedly liable for all of defendant Northwest's negligence. The Court has reviewed the extensive affidavits, memoranda submitted by the parties; studied a number of the collateral issues raised in this litigation; closely examined the hold harmless clause or indemnification agreement in light of the factual circumstances, and reached the conclusion that such an argument is not valid or applicable in this instance.

By the statements of defendant Northwest's own witnesses, in their depositions, the subject aircraft was to be stored in Northwest hangar for a few days. Defendant Northwest was to provide no services and in fact did not provide any services. Defendant Northwest's own employees who filled in the blank form entered the following "Use of Hangar for working on Convair Aircraft rate $100.00 per day". The blank form also had the words "Supplies and/or Services" crossed out with initials inserted above such words. The subject aircraft was merely located in the Northwest hangar. There were no services provided by defendant Northwest, no services requested and no services contemplated by defendant Northwest.

Viewing the blank form in its entirety it contemplates a relationship for services by defendant Northwest. The indemnification speaks in terms of services. But absolutely no services were rendered or were to be rendered by defendant Northwest to plaintiff or anyone else in the instant action.

By defendant Northwest's own admission the damage to the subject aircraft did not occur or "arise out of or in connection with performance" of any service. The damage occurred while the subject aircraft was parked in the hangar while absolutely no one was attending it and one of defendant Northwest's employee ran into it.

Under the Illinois cases any indemnification agreement must be strictly construed. Mesker Bros. v. Des Lauries, 8 Ill.App.3d 113, 289 N.E.2d 223; Schek v. Chicago Transit Authority, 42 Ill.2d 362, 247 N.E.2d 886. Accordingly, the words "services" and "arising out of or in connection with performance of such services however caused" must take on the meaning of services by defendant Northwest. Defendant Northwest provided no service which normally refers to work, labor, performance of some affirmative job action, etc. rather than the passive letting of space to the plaintiff for the subject aircraft. Construing such provision strictly and against the person who prepared such language the indemnification clause is meaningless under the circumstances in this case. Therefore no validity could attach to such clause and defendant Northwest cannot use it to exculpate itself from its own liability.

In *Mesker, supra,* citing to one of leading cases on indemnity provisions in Illinois, it was said as follows:

"In Westinghouse Co. v. Bldg. Corp., 395 Ill. 429, at page 433, 70 N.E.2d 604 at page 607, the court held:

'It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract [citing cases], or such intention is expressed in unequivocal terms.'

Applying this view to the facts, the court ruled that an indemnity contract specifically covering the negligence of a contractor in favor of the owner of the premises did not include injuries caused by the negligence of the owner's employee, stating that such a construction would impose on the contractor the duty to indemnify against injuries entirely outside his control." 289 N.E.2d at page 224.

Likewise in the instant case plaintiff was totally unable to protect himself or the subject aircraft against the damage caused by defendant Northwest's own employee while the subject aircraft was in defendant Northwest's hangar.

Again looking at the indemnification clause it makes absolutely no reference to protecting defendant Northwest from its own negligent acts regarding the use of the hangar by plaintiff's subject aircraft. The clause is worded in terms of services, none of which were rendered by defendant Northwest to plaintiff or to anyone on plaintiff's behalf. Under

these circumstances defendant Northwest cannot avail itself of the indemnification clause.

One other material question remains. Did plaintiff give proper notification to Ranger Insurance? This question appears to present a genuine issue. However, in light of the Court's ruling that the hold harmless clause was not valid or applicable to the facts in this case the question may become moot. However, summary judgment against Ranger Insurance at this point would not be proper.

Accordingly, plaintiff's motion for a summary judgment on the issue of liability as to defendant Northwest Airlines, Inc. is granted. Plaintiff's motion as to defendant Ranger Insurance is hereby denied at this time.