**CONCAST, INC., Plaintiff–Appellee,**

v.

**AMCA SYSTEMS, INC., doing business as Morgan Engineering, Defendant–Appellant.**

**No. 91–2179.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1992.

Decided March 10, 1992.

Al J. Pranaitis, Hoagland, Fitzgerald, Smith & Pranaitis, Alton, for Joel Henry.

Daniel L. Schmidt, Jan E. Steinberg (argued), Peter Von Gontard, Sandberg, Phoenix & Von Gontard, St. Louis, Mo., for AMCA Systems, Inc.

James E. DeFranco (argued), Carl W. Lee, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, Ill., for Concast, Inc.

Before POSNER, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1979 Concast, Inc., undertook construction of a new continuous slab casting facility for Granite City Steel Co. in Illinois. Concast installed three heavy-duty cranes.

AMCA Systems, Inc., designed and made the cranes, shipping them to the site in segments, which Concast assembled. Concast bought the cranes from AMCA under a purchase order providing, among other things, that AMCA as seller

> agrees to indemnify and save harmless the Buyer [Concast] ... from and against all loss or expense (including costs and attorney's fees) by reason of liability imposed by law upon the Buyer, for damages because of bodily injury ... sustained by any person or persons ... arising out of or in consequence of the performance of this contract....

In 1984 Joel Henry, a millwright for Granite City Steel, was injured while using one of the cranes. Because of the workers' compensation laws, Henry could not sue Granite City Steel. Instead he sued Concast and AMCA. Concast filed this cross-claim invoking the indemnification clause. After settling with Henry for $15,000, Concast demanded that sum, plus legal expenses, from AMCA. Concast prevailed on motion for summary judgment. Although the district judge did not enter a proper judgment under Fed.R.Civ.P. 58, AMCA's appeal is within our jurisdiction under *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

Henry's complaint related objections to the design of the crane and lack of warning about risks, not its assembly. Indemnity under the common law is normal in such cases, *Prosser and Keeton on The Law of Torts* § 51 (5th ed. 1984), which creates something of a puzzle about why AMCA and Concast dispute the meaning of the contractual indemnity clause. Perhaps it is the provision for legal expenses? However that may be, AMCA's principal contention in the district court—that the clause violates the public policy of Illinois because it may require AMCA to indemnify Concast for Concast's own negligence—is no longer the sticking point. Instead AMCA insists that the clause expired when Concast accepted delivery of the crane.

Language is an unruly tool because meaning is contextual, and there are so many contexts—surrounding words, bargaining history, understandings of the author (or audience) and of other participants in the market, nature of the business transaction. Lists of this kind may be spun out at length. Rare is the text whose meaning cannot be complicated by one of these contexts. Although these many contexts can illuminate the text, a court captivated by the resulting ambiguity may defeat the central purposes of contract: to establish obligations for the present and allocate between the parties the risks of events that may occur in the future. By the time the future has arrived, either side can point to events that serve as additional contexts. When the inevitable tugs of the contexts lead to complex legal proceedings, certainty is defeated and costs of contracting rise.

Put into almost any of the possible contexts, the language of the AMCA–Concast contract is clear enough. The parties contemplated liability in tort arising out of this durable product and assigned that risk to AMCA, the designer and principal manufacturer. Henry complained of "bodily injury ... arising out of or in consequence of the performance of this contract" to supply the cranes. "[A]rising out of or in consequence of" is broad language indeed. Assigning liability to AMCA makes sense, for AMCA was better placed to curtail the injuries caused by its cranes, and thus to diminish the total costs of precautions and injuries. Concast and AMCA could share any resulting savings. Indemnification under the contract tracks the common law of torts and in addition recognizes that the full costs of injuries include the operation of the legal system. The danger caused by defective design or manufacture begins when the crane enters service; yet by AMCA's reasoning its contractual liability ends earlier. AMCA advances no reason (and we can think of none) why the parties would have wanted to allocate liability for injuries from this durable product to AMCA before its assembly and to Concast afterward.

AMCA asks us to disregard the economic context of the transaction and focus on a linguistic one: the indemnification language appears in a paragraph of the contract captioned "INSURANCE". The first

sentence of this paragraph required AMCA "to furnish proof that it carries adequate insurance coverage giving it protection against all liabilities, claims or demands for injuries ... that may arise from the performance of the work under this order." The "work under this order", according to AMCA, is the furnishing of three disassembled cranes. Insurance thus need cover no more than injuries incurred during the delivery of the parts to Granite City Steel's premises. In AMCA's view the insurance serves to back up the obligation of indemnification, which must then be similarly limited in time. Although this is a possible reading of the language, for the reasons we have already given it is not a sensible one. Contracts represent efforts to allocate duties and costs in order to improve the joint welfare of the parties. AMCA does not inform us what anticipated benefit would have led the parties to make AMCA, the designer of the crane, responsible for injuries during delivery, while Concast, the assembler, bore the risk of injuries attributable to the crane's design and manufacture. Yet this is the upshot of AMCA's proposed reading. Such a reading at all events lacks even the linguistic support AMCA sees in the first sentence of the paragraph. For the next sentence describes indemnity as a "further" obligation when injuries arise "out of or in consequence of the performance of this contract". That obligation extends beyond the "performance of the work under this order."

Neither side asked for a trial to determine the parties' "intent" in settling on this language. As the formula is preprinted on an order form, there is no intent to be had distinct from the language itself. Each side insisted that the contract is plain and requires judgment without further ado. The varying contexts show that the meaning is not "plain," but all important indicators point in Concast's direction.

Perhaps things would be otherwise if this language came with the weight of prior interpretations; contracting parties often use formulae that yield known judicial reactions. This text has no litigated antecedent.* AMCA refers us to a number of opinions concluding that less compendious formulations do not cover particular injuries. For example, *Li Petri v. Turner Construction Co.*, 36 Ill.2d 597, 224 N.E.2d 841 (1967), holds that a clause allocating to an electrical subcontractor full responsibility "for any and all damage ... growing out of or resulting from the execution of the work provided for in this Contract" did not oblige the subcontractor to indemnify the general contractor when a hoist on which the subcontractor had worked caused an injury. That clause spoke of injury from the "execution of the work"; we read the AMCA–Concast contract to allocate risks of injury caused by the cranes themselves. AMCA "performed" its contract by designing, manufacturing, and delivering cranes, not by doing work on site.

Little purpose would be served by discussing other cases; none involves language matching this contract's. Even with the benefit of the doubt—Illinois courts prefer to read indemnification clauses narrowly, see *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, 395 Ill. 429, 70 N.E.2d 604 (1946)—AMCA has not established a reason for further proceedings. Neither AMCA nor Concast wanted a trial. Concast's reading is the more sensible, so it prevails.

AFFIRMED.

RIPPLE, Circuit Judge, concurring.

I concur in the result.

---

\* With the aid of the legal databases available electronically, we found a single case dealing with a contract containing the phrase "out of or in consequence of the performance of this contract." *Stellato v. Flagler Park Estates,* 11 Misc.2d 413, 172 N.Y.S.2d 90 (Sup.Ct.), affirmed without opinion, 6 A.D.2d 843, 176 N.Y.S.2d 242 (1958). A few other cases (none in Illinois) involve some small variation on the language. *Stellato* reads the phrase broadly; none of the other courts interprets it, as opposed to deciding whether the indemnity provision was enforceable.